Filed 7/31/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ISIDORA M., | B256587 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. KQ017897) |
| v. | |
| SILVINO M., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, H. Don Christian, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Reversed in part and otherwise affirmed.

Neighborhood Legal Services, Natalie Samarjian and David Pallack for Plaintiff and Appellant.

Guerrero & Chan, Marissa E. Barela and Daniel A. Guerrero for Defendant and Respondent.

_____

Plaintiff and appellant Isidora M. (Isidora)[1] appeals the trial court's issuance of a mutual restraining order insofar as the order enjoins her conduct. The trial court issued a five-year mutual restraining order on a petition brought by Isidora pursuant to the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.),[2] in which she sought a restraining order against her husband, defendant and respondent Silvino M. (Silvino), from whom she was separated.

Isidora contends the trial court erred in making the restraining order *mutual* in the absence of an affirmative request by Silvino for such protection. We agree. We conclude that a trial court may issue a mutual domestic violence restraining order under section 6305 only if both parties have filed requests for such relief, so as to give the requisite notice to the opposing party.

Accordingly, the mutual restraining order, insofar as it restrains Isidora, is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Earlier proceedings*

The parties had a volatile relationship. They were married in 2001 and separated in 2009. On May 8, 2012, Isidora was arrested following a heated confrontation between them. On May 10, 2012, a criminal protective order was issued against her. That order was modified on July 31, 2012, and again on July 31, 2013, the latter order barring Isidora from coming within 100 yards of Silvino. The criminal protective order will expire on July 31, 2016.

---

[1]    We refer to the parties by their first names for purposes of clarity and not out of disrespect. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1.)

[2]    All further statutory references are to the Family Code, unless otherwise specified.

*2. The instant case*

On February 14, 2014, Isidora filed a request for a domestic violence restraining order, pursuant to the DVPA, against Silvino for herself and their two minor children. She stated in the request that she feared for her safety and that of her family because Silvino had threatened to kill her.

Silvino did not request a restraining order against Isidora. Silvino filed a response (Judicial Council Form DV-120), stating he did not agree to the order requested by Isidora.[3] Silvino's supporting declaration requested that the court deny relief to Isidora and that he be granted sole legal and physical custody of the children. In support of his request for sole legal and physical custody, Silvino attached supporting exhibits, including a 2009 crime report from the West Covina Police Department that showed Isidora had been arrested for willful infliction of corporal injury on Silvino, a 2012 crime report indicating Isidora had been arrested for assault with a deadly weapon and spousal battery, the May 10, 2012 criminal protective order restraining Isidora, and the two subsequent modifications thereto.

When the matter came on for hearing on March 28, 2014, the trial court indicated the matter at hand was Isidora's request for a domestic violence restraining order against Silvino. The trial court heard testimony from Isidora, Silvino, and others. Isidora was asked about her 2012 guilty plea to a charge of domestic violence, and about the underlying incident that led to that arrest. Isidora testified, inter alia, that she needed a restraining order in this case because Silvino repeatedly had threatened to kill her.

During closing argument, there was no discussion of a restraining order to protect Silvino from Isidora. The focus of argument was on Isidora's credibility and whether she needed a restraining order against Silvino.

---

[3]     Although Silvino filed a DV-120 form responding to Isidora's request for a domestic violence restraining order—and although he checked the boxes indicating *he did not agree* to the personal conduct order or stay-away orders that Isidora requested— his DV-120 response did not give notice to Isidora that the upcoming hearing could lead to the issuance of a mutual restraining order.

Once the matter was submitted, the trial court issued a five-year *mutual* restraining order. The court stated, "[I]t's clear to me that there . . . has been domestic violence in this household. [¶] [Isidora has] already been convicted so I don't have to make any findings. That's been established [ ] beyond a reasonable doubt. She's a restrained person. . . . [¶] . . . [¶] Simply put, it's unfortunate for these parties; but what they forgot is when they brought it to hearing[,] because there are written responsive pleadings in this case[,] that authorizes me to make cross orders. So, therefore, I find that there is evidence of domestic violence in [this] household and in this relationship. [¶] I also make a finding that I'm going to make mutual orders. . . . [¶] . . . [¶] I'm issuing these orders for five years against both parties, five years from this date." The trial court noted that Isidora was already subject to a criminal protective order to stay away from Silvino, "so this is really kind of a repetition of that order."

Isidora's attorney sought a clarification, stating: "I just want to make sure I understand correctly that, although a restraining order was never requested by [Silvino] in [this] case it is still being issued, five years protective to [Silvino]?" The trial court confirmed, "That's correct. . . . [*Be*]*cause he filed responsive papers*. That opens my jurisdiction." (Italics added.)

Isidora filed a timely notice of appeal from the March 28, 2014 restraining order.[4]

## CONTENTIONS

Isidora contends the trial court lacked the authority to issue a restraining order against her without a request by Silvino for such relief. We consider both that issue and whether the restraining order against Isidora is infirm on the ground the trial court issued the order without making the detailed factual findings required by section 6305.[5]

---

[4]     The DVPA mutual restraining order is appealable as an order granting an injunction. (Code Civ. Proc., § 904.1, subd. (a)(6); see, e.g., *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 187 [civil harassment restraining order under Code Civ. Proc., § 527.6]; see generally, 4 Cal.Jur.3d Appellate Review (2015 ed.) § 74.)

[5]     Following the receipt of the parties' briefs, pursuant to Government Code section 68081 we requested supplemental briefing on the following issues: (1) whether the 2012

**DISCUSSION**

1. *Standard of appellate review.*

While we review the trial court's decision issuing a restraining order under the DVPA for an abuse of discretion (*J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975), the statutory construction of section 6305 is a pure question of law which we review de novo (*In re Marriage of Davis* (July 20, 2015, S215050) __ Cal.4th __, __ [2015 DJDAR 8319, 8320] (*Marriage of Davis*); *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal. 4th 415, 432).

2. *Trial court erred in issuing a mutual restraining order under section 6305 because Silvino did not file a request seeking a restraining order against Isidora.*

   a. *Viewing section 6305 in the context of the entire DVPA of which it is a part, a mutual restraining order may not be issued without a written request by the responding party seeking such relief against the moving party.*

The trial court issued a mutual DVPA restraining order pursuant to section 6305, although Silvino had not requested a restraining order against Isidora.[6] At the relevant

---

criminal protective order against Isidora was sufficient to relieve the trial court of its duty to make detailed findings of fact as to whether Isidora was a primary aggressor and was not acting primarily in self-defense; (2) whether the 2012 restraining order and modifications thereto were the sole basis for the 2014 restraining order against Isidora; and (3) if so, whether the 2014 restraining order against Isidora could be predicated entirely on the previously adjudicated matter. We have considered the parties' supplemental filings.

[6]    The stated purpose of the DVPA is "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) Section 6320 enumerates various types of conduct that may be addressed by a restraining order, to wit, a party may be enjoined "from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating as described in Section 528.5 of the Penal Code, falsely personating as described in Section 529 of the Penal Code, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other

5

time, section 6305 provided: "The court *may not* issue a mutual order enjoining the parties from specific acts of abuse described in Section 6320 (a) *unless* both parties personally appear and each party presents written evidence of abuse or domestic violence and (b) the court makes detailed findings of fact indicating that both parties acted primarily as aggressors and that neither party acted primarily in self-defense." (Stats. 1995, ch. 246, § 2, italics added.)[7]

Silvino contends that section 6305's plain language provides that all that is required for a mutual restraining order is (1) both parties appear and present written evidence of abuse or domestic violence, and (2) the trial court make detailed findings that both parties acted as aggressors and not primarily in self-defense. In other words, Silvino urges that a court has the power to issue a mutual restraining order *without a reciprocal request by the responding party*. Isidora disagrees, asserting that the trial court lacked authority to issue a restraining order against her in the absence of a written request by Silvino seeking such relief.

As Silvino notes, section 6305 sets forth two criteria for the issuance of a mutual restraining order: both parties must personally appear and present written evidence, and the trial court must make detailed findings that both parties acted primarily as aggressors and not primarily in self-defense. However, although section 6305 is phrased in the

party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (§ 6320, subd. (a).)

[7] The 1995 version of section 6305 was operative at the time this matter was heard below. The statute was amended effective January 1, 2015. At present, it provides: "(a) The court *shall not* issue a mutual order enjoining the parties from specific acts of abuse described in Section 6320 *unless* both of the following apply: [¶] (1) Both parties personally appear and each party presents written evidence of abuse or domestic violence. [¶] (2) The court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense. [¶] (b) For purposes of subdivision (a), in determining if both parties acted primarily as aggressors, the court shall consider the provisions concerning dominant aggressors set forth in paragraph (3) of subdivision (c) of Section 836 of the Penal Code." (§ 6305, italics added; Stats. 2014, ch. 635, § 6, eff. Jan. 1, 2015.)

6

negative—it precludes the issuance of a mutual restraining order *unless* both these criteria are met—it does not purport to specify every prerequisite to the issuance of a mutual restraining order. Section 6305 does not state that a court is empowered to enter a restraining order so long as the two specified criteria are met; rather, it states that a mutual restraining order cannot issue *unless* those requirements are met. Accordingly, considered alone, section 6305 is ambiguous as to whether the two criteria specified therein are sufficient, or merely necessary.

Our analysis of the statute is guided by well-settled principles. " 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.] [¶] Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part. "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" [Citations.] " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] . . . 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" ' [Citation.]" (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32; accord, *Marriage of Davis*, *supra*, __ Cal.4th at p. __ [2015 DJDAR at pp. 8320-8321].)

Under the DVPA, a temporary domestic violence restraining order may be issued "without notice" (§ 6300), but an order issued without notice becomes unenforceable if no hearing is held within 21 or 25 days thereof (unless the temporary order is reissued).

7

(§§ 242, 6327.) Thus, although a domestic violence restraining order may be issued without notice, on an ex parte basis, such an order is temporary and for a brief duration.

In contrast, a permanent restraining order with a duration of five years, such as was issued in this case, may be issued only "*after notice* and a hearing under this article." (§ 6345, subd. (a), italics added.) The notice of hearing must "notify the respondent that if he or she does not attend the hearing, the court may make orders against him or her that could last up to five years." (§ 6302.) There was no need for the Legislature to include a separate notice requirement within section 6305 because that section is preceded by section 6302, which requires that notice of hearing be given to the person against whom a permanent restraining order is being sought.

Construing section 6305 in the context of the DVPA statutory scheme of which it is a part, we conclude the trial court may issue a mutual restraining order under section 6305, with a duration of up to five years, only where *both* parties have filed requests for such relief, so as to give the requisite notice to the opposing party.

b. *Legislative history.*

Our conclusion regarding the interpretation of section 6305 is confirmed by its legislative history.

Assuming arguendo the plain language of the statutory scheme does not resolve the interpretive question, so as to require this court to consider extrinsic aids such as the legislative history of the statute (*Marriage of Davis*, *supra*, __ Cal.4th at p. __ [2015 DJDAR at p. 8321]; *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582-583), the legislative history of section 6305 is clear. It is recognized that "an 'examination of the original text of the statute and the evolution of the language' of a statute that has been amended is 'useful in ascertaining its current meaning.' [Citation.]" (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1400.)

As originally enacted in 1993, section 6305 provided: "The court may not issue a mutual order enjoining the parties from specific acts of abuse described in Section 6320

8

unless both parties personally appear and each party presents written evidence of abuse or domestic violence.  In this case, written evidence is not required if both parties agree that this requirement does not apply."  (Stats. 1993, ch. 219, § 154.)

In 1994, Congress enacted the Violence Against Women Act (VAWA) (42 U.S.C. § 13981 et seq.).  In conjunction with VAWA, Congress empowered the Attorney General of the United States to award grants to eligible states, local governments and Indian tribal units, to promote various policy goals aimed at reducing domestic violence.  (42 U.S.C. § 3796hh(b).)  To obtain funding, grantees were required to "certify that their laws, policies, or practices *prohibit issuance of mutual restraining orders of protection except in cases where both spouses file a claim* and the court makes detailed findings of fact indicating that both spouses acted primarily as aggressors and that neither spouse acted primarily in self-defense."  (42 U.S.C. § 3796hh, former subd. (c)(3), italics added.)[8]

In 1995, the California Legislature amended section 6305 in two respects.  It eliminated the waiver provision, by deleting the sentence that provided that "written evidence is not required if both parties agree that this requirement does not apply."  (See 1995 Amendment, Deering's Ann. Fam. Code (2006 ed.) foll. § 6305, pp. 342-343.)  The Legislature also added the requirement that for a mutual protective order, the trial court must make detailed findings of fact that both parties acted primarily as aggressors and that neither party acted primarily in self-defense.  (*Id*. at p. 342.)[9] [10]

---

[8]     The current version of the federal statute uses the word "parties" instead of "spouses."  (42 U.S.C. § 3796hh(c)(1)(C).)

[9]     The 1995 version of section 6305 is quoted above at section 2a. of the Discussion.

[10]     The 1995 amendment "help[ed] ensure that a mutual order is the product of the careful evaluation of a thorough record and not simply the result of the moving party yielding to the other's importunities or the court deciding that a mutual order is an expedient response to joint claims of abuse."  (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 204.)

The express purpose of the 1995 amendment to section 6305 was "to make California eligible for federal funding under the Violence Against Women Act and to improve the response of law enforcement to domestic violence and protective order violation calls." (Sen. Rules Com., analysis of Sen. Bill No. 591 (1995-1996 Reg. Sess.) as amended June 13, 1995, p. 3.) The California Senate Rules Committee analysis stated: "The federal Violent Crime Control and Law Enforcement Act of 1994 [(of which the VAWA is a part[11])] authorizes $120 million in grant money available to states, local governments and Indian tribal units to encourage arrest policies for domestic violence offenders. Applicants for these funds must certify that their laws and official policies: [¶] . . . [¶] *Prohibit issuance of mutual restraining orders of protection except in cases where both spouses file a claim* and the court makes detailed findings of fact indicating that both spouses acted primarily as aggressors and that neither spouse acted primarily in self-defense." (*Id*. at p. 3, italics added.)

Thus, the Legislature's express intent in amending section 6305 was to ensure California's full conformity with federal law so as to make the state eligible for federal funding under the VAWA. Therefore, section 6305 cannot be construed as authorizing the issuance of a mutual DVPA restraining order in a case in which only one party has filed a request for a domestic violence restraining order.

c.       *Constitutional considerations.*

When "a question of statutory interpretation implicates constitutional issues, we are guided by the precept that ' "[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction

---

[11]       In "September 1994, Congress passed the Violence Against Women Act of 1994, a comprehensive statutory enactment designed to address 'the escalating problem of violent crime against women,' as part of the larger Violent Crime Control and Law Enforcement Act of 1994, P.L. 103–322. S.Rep. 103-138, 103rd Cong., 1st Sess., *Violence Against Women Act of 1993*, 38 (Sept. 10, 1993)." (*Doe v. Doe* (D.Conn. 1996) 929 F.Supp. 608, 610-611, fn. omitted.)

which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable." ' (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 548; see *People v. Leiva* (2013) 56 Cal.4th 498, 506–507 (*Leiva*) ['[W]e adhere to "the precept 'that a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity.' " ']. )  This rule, called the canon of constitutional doubt (Scalia & Garner, Reading Law:  The Interpretation of Legal Texts (2012) p. 249 (Scalia & Garner)), has been described as a 'cardinal principle' of statutory interpretation that 'has for so long been applied . . . that it is beyond debate' (*DeBartolo Corp. v. Fla. Gulf Coast Trades Council* (1988) 485 U.S. 568, 575 [99 L.Ed.2d 645, 108 S.Ct. 1392])." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373.)

Judicial Council Form DV-130, Restraining Order After Hearing (rev. July 1, 2014), describes the serious consequences that may result from the violation of a restraining order, including:  "If you do not obey this order, you can be arrested and charged with a crime.  [¶]  If you do not obey this order, you can go to jail or prison and/or pay a fine.  [¶]  It is a felony to take or hide a child in violation of this order.  [¶] If you travel to another state or to tribal lands or make the protected person do so, with the intention of disobeying this order, you can be charged with a federal crime.  [¶]  You cannot have guns, firearms, and/or ammunition." (*Id*. at p. 5.)

If we were to interpret section 6305 in the manner proposed by Silvino, so as to permit the trial court to enter a five-year restraining order against Isidora without any notice to her that it was considering doing so, a serious due process question would be raised.  " 'The essence of procedural due process is notice and an opportunity to respond. [Citation.]  "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' " ' (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1279.)" (*Thornbrough v. Western Placer Unified School District* (2013) 223 Cal.App.4th 169, 183-184.)  Isidora

11

was not given the opportunity to defend against the entry of a restraining order *against her* because Silvino never requested, and the trial court never advised it was contemplating, such an order. Our determination that the trial court may issue a mutual restraining order under section 6305 only where both parties have filed requests for such relief avoids any concerns with respect to the statute's constitutionality.

d. *Silvino's reliance on* Monterroso *is misplaced.*

Silvino cites *Monterroso v. Moran* (2006) 135 Cal.App.4th 732 for the proposition that an affirmative pleading by the responding party is not required for the issuance of a mutual restraining order. There, wife sought a restraining order, husband filed an answer, wife indicated she would be agreeable to mutual restraining orders and the trial court altered the proposed restraining order submitted by wife to make it mutual. (*Id*. at pp. 735-736.) The reviewing court reversed on the ground the trial court failed to make the detailed findings required by section 6305. (*Id*. at p. 734.)

*Monterroso* is a thin reed upon which to rely. *Monterroso* did not address whether both parties must file a request for a restraining order in order for a mutual restraining order to issue. It therefore is not authority for that proposition. " ' "It is axiomatic that cases are not authority for propositions not considered." ' [Citation.]" (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; accord, *Marriage of Davis*, *supra*, __ Cal.4th at p. __ [2015 DJDAR at p. 8325].)[12]

---

[12]    We also note that in *J.J. v. M.F*., *supra*, 223 Cal.App.4th 968, as here, the petitioner sought a restraining order pursuant to the DVPA, the response to the application for a restraining order did not request a restraining order against the moving party, but the trial court issued a mutual restraining order. (*Id*. at pp. 973-974.) The reviewing court held substantial evidence did not support the issuance of a restraining order against the moving party and therefore did not reach the appellant's contention that the trial court's sua sponte issuance of a mutual restraining order violated her due process rights. (*Id*. at pp. 974-975.)

3. *The trial court also failed to make detailed findings of fact in accordance with section 6305.*

As indicated, section 6305 required the trial court to make "detailed findings of fact indicating that both parties acted primarily as aggressors and that neither party acted primarily in self-defense" before issuing a mutual restraining order.

Here, the trial court reasoned, "[Isidora has] already been convicted *so I don't have to make any findings*. That's been established [ ] beyond a reasonable doubt. She's a restrained person." (Italics added.)

Given the language of section 6305, we conclude the trial court erred in substituting the bare fact of Isidora's guilty plea to a charge of domestic violence for detailed findings of fact indicating that she acted primarily as an aggressor and not primarily in self-defense as required by section 6305. (See *Monterroso v. Moran*, *supra*, 135 Cal.App.4th at p. 734 [trial court acts in excess of jurisdiction by entering a mutual restraining order without making detailed findings required by section 6305].)[13]

---

[13] In any event, a guilty plea, while admissible in a subsequent civil action, does not have conclusive effect. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605; *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 767, fn. 4; *20th Century Ins. Co. v. Schurtz* (2001) 92 Cal.App.4th 1188, 1193.) Therefore, Isidora's earlier guilty plea did not conclusively establish that she acted primarily as an aggressor and not primarily in self-defense.

**DISPOSITION**

The March 28, 2014 mutual restraining order, insofar as it restrains Isidora, is reversed.  In all other respects, the order is affirmed.  Isidora shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.


We concur:


KITCHING, J.


EGERTON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.