Filed 1/9/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JONATHAN V., <br><br> a Person Coming Under the Juvenile Court Law. | B271319 <br><br> (Los Angeles County Super. Ct. No. PJ51828) |
| THE PEOPLE, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> JONATHAN V., <br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Morton Rochman, Judge. Reversed.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and

David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

On February 10, 2016, defense counsel, in a juvenile case, walked into court for a trial setting conference and was given "notice" by the prosecutor that the People were going to seek a two-year restraining order against her client, Jonathan V. When the case was called, defense counsel objected to the issuance of the order, informed the court she had not been given prior notice of the People's application and requested time to prepare for the hearing. Overruling defense counsel's objections, the court issued the two-year restraining order.

Jonathan argues the order must be reversed because (1) he did not receive adequate notice of or a hearing on the People's application for the restraining order, and (2) the order is not supported by substantial evidence.[1] Because we agree the juvenile court erred by issuing the restraining order without providing Jonathan sufficient notice or a meaningful opportunity to be heard, we reverse the two-year restraining order. In light of this ruling, we need not reach Jonathan's second contention concerning the sufficiency of the evidence.

_____

[1]     Restraining orders issued in juvenile proceedings are appealable. (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 208.)

2

## FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 2015, Randy G., Brandon S., H.Y., and Justin P. (hereinafter referred to collectively as "victims") were walking down the street when a gray truck with a camper pulled up next to them.[2]  Jonathan and approximately six companions exited the truck and asked, "Where you guys from?"  When the victims did not answer, Jonathan and his companions yelled, "San Fer."[3]  One of the companions pointed a gun at the victims while the others took the victims' wallets, cell phones and jewelry.  The robbers got back in the truck and left.

A little while later, one of the victims flagged down police officers and told them he had been "jumped" by Jonathan and his companions.  The police located the gray truck and attempted to conduct a traffic stop, but the truck drove away.  A pursuit ensued, and the truck ran off the road and hit a guard rail.  The occupants fled on foot, but were caught and arrested.

The victims identified Jonathan as one of the perpetrators. The police recognized Jonathan as a "San Fer" gang member. Jonathan denied any gang involvement.

On December 8, 2015, the People filed an amended petition alleging that on December 4, Jonathan, then 15 years old, committed second degree robbery against the four victims (Pen. Code, §§ 211, 212.5, subd. (c)), that a principal personally used a firearm in the commission of the crimes (*id.*, § 12022.53,

---

[2]    The factual background is based upon the probation officer's report and the detention report.

[3]    "San Fer" refers to a street gang.

subds. (b), (e)(1)), that a principal was armed with a firearm in the commission of the crimes (*id*., § 12022, subd. (a)(1)), and that the crimes were committed for the benefit of a criminal street gang (*id*., § 186.22, subd. (b)(1)(B)).

At the December 9 detention hearing, Jonathan denied the allegations of the petition. The trial court found a prima facie case that Jonathan was a person described by Welfare and Institutions Code section 602, and detained him in juvenile hall. On January 5, 2016, Jonathan was placed on home detention in the community detention program.

At the February 10 trial setting hearing, at which Jonathan was present, he was released from the community detention program over the People's objection. The court based its decision on the positive reports it had received from his high school and the community.

At the same hearing, the People requested a juvenile restraining order precluding Jonathan from contacting the victims of the crime. Defense counsel objected to the request and stated she "wouldn't object to the court ordering my client to stay away from anyone he knows to be a witness or victim alleged in this case, but I don't think it's appropriate for a CLETS-type[4] order. This is a restraining order that's going to stay in the file for the rest of my client's life. For a CLETS-type order, restraining order in domestic violence type cases, my client doesn't—there is no allegation my client has any contact with anyone on that list."

---

4      CLETS refers to the California Law Enforcement Telecommunications System. (Gov. Code, § 15150 et seq.; *People v. Martinez* (2000) 22 Cal.4th 106, 113, 124.)

4

Defense counsel argued Jonathan "is entitled to an actual hearing before the court signs that order, and I would request that we set a hearing on that. I had no notice of it. The district attorney walks in with a serious restraining order which I have no notice of and asks the court to sign something. I think my client's entitled to have his attorney be able to articulate and be prepared on this, and this is not something that is going to go away. These go into the CLETS system and stay there forever. And the juvenile court has always been able to order my client to stay away as a condition of his release, stay away from the witnesses and victims, and I think that that's appropriate."

The People responded that rule 5.630 of the California Rules of Court authorized them to make their request orally and without notice. Additionally, the People argued issuance of the order was reasonable because of the seriousness of the charges, and the fact Jonathan was out of custody and no longer in the community detention program.

The court agreed with the People. The court noted the petition "has multiple victims, and the allegations are serious violations of the Penal Code. The motion by the People is well taken. Over [Jonathan's] objection, the court signed the order . . . ." The restraining order went into effect on February 10, 2016, for a period of two years, lasting until February 10, 2018.[5]

---

[5] We augment the record, on our own motion (Cal. Rules of Court, rule 8.155), adding the November 9, 2016, minutes from the superior court file (Evid. Code, § 452, subd. (d)), which indicate that at the adjudication hearing held on that date, the court sustained the petition based upon Jonathan's admission to

5

**DISCUSSION**

The issue in this case is whether Jonathan received adequate notice and an opportunity to contest the People's request for a two-year restraining order. We conclude Jonathan did not receive adequate notice or an adequate opportunity to be heard to contest the issuance of the order.

A.  *Standard of Review*

The question whether the order was authorized under the statute, as a matter of statutory interpretation, is reviewed de

---

one count of robbery in the second degree, that a principal was armed with a firearm in the commission of the offense, and one count of grand theft from a person (Pen. Code, § 487, subd. (c)). The adjudication order provides that Jonathan will be allowed to withdraw his plea to robbery and the special allegation "if, after [two] years, [he] has absolutely no violations." Jonathan was declared a ward of the court under Welfare and Institutions Code section 602 and was placed at home on probation. One of the conditions of probation was that Jonathan have no "contact with or have someone else contact the victims or witnesses of any offense against" him. The language of the restraining order is broader, ordering Jonathan not to "molest, attack, strike, stalk, threaten, batter, harass, destroy the personal property of, or disturb the peace; contact, either directly or indirectly, in any way, including but not limited to, in person, by telephone, in writing, by e-mail, by text message, or by other electronic means, and stay away at least 100 yards from the home, job, vehicle, and school of protected persons. Do not take any action to get the address or location of protected persons, or the addresses or locations of family members, caregivers, or guardians of protected persons."

novo.  (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 956 (*Babalola*).)  We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law."  (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482.)

B.      *The Juvenile Court Erred by Issuing a Two-year Restraining Order*
      1.      *The Law Applicable to Restraining Orders in Juvenile Delinquency Proceedings*

Welfare and Institutions Code section 213.5 (section 213.5) governs the issuance of restraining orders in juvenile delinquency proceedings.[6]  Section 213.5 provides for two types of restraining orders: (1) temporary orders that may be issued without notice and a hearing, and which may remain in effect for a maximum of 25 days (*id.*, subd. (c)); and (2) restraining orders that may be issued after notice and a hearing and which can remain in effect for a period of up to three years (*id.*, subd. (d)).

When a party seeks a temporary restraining order, subdivision (c) of section 213.5 permits the juvenile court to issue a temporary restraining order without notice or a hearing.  (See also Cal. Rules of Court, rule 5.630(b) & (d) (rule 5.630).)  A temporary restraining order issued without notice may remain in effect for a period not to exceed 21 days, or for good cause, 25 days, after which the court must either hold a hearing to

_____

[6]      California Rules of Court, rule 5.630 also applies to the issuance of restraining orders in juvenile delinquency proceedings.

determine whether to issue a restraining order or to dissolve the temporary restraining order.  (§ 213.5, subd. (c)(1).)  A temporary restraining order issued under this subdivision may be extended for a limited time if the court grants either party a continuance.  (*Id.*, subd. (c)(2)-(4).)  The party to be restrained is "entitled, as a matter of course, to one continuance, for a reasonable period, to respond to the petition."  (*Id.*, subd. (c)(2).)  A temporary restraining order must be issued on form JV-250.  (Rule 5.630(d)(2) ["The temporary restraining order must be prepared on *Notice of Hearing and Temporary Restraining Order—Juvenile* (form JV-250) and must state on its face the date of expiration of the order"].)

Subdivision (d) of section 213.5 authorizes the court to issue a restraining order, as distinguished from a temporary restraining order, that can remain in effect for up to three years, but only "upon notice and a hearing."  (§ 213.5, subd. (d)(1).)  This order must be issued on form JV-255.  (Rule 5.630(f)(2) ["The order after hearing must be prepared on *Restraining Order—Juvenile* (form JV-255) and must state on its face the date of expiration of the order"].)

2. *Jonathan Did Not Receive Adequate Notice or an Opportunity to Be Heard Prior to the Issuance of the Two-year Restraining Order*

The restraining order in this case is not a temporary restraining order.  It was not issued on form JV-250, the form designated for temporary restraining orders, but rather on form JV-255, the form used to issue restraining orders.  And the order is effective for a period of two years, from February 10, 2016 through February 10, 2018, well beyond the 21 or 25 days

8

permitted for a temporary restraining order.  Before the court can issue such an order, however, subdivision (d) of section 213.5 requires notice and a hearing.  Jonathan received neither.

The People, relying on rule 5.630, contend the order was properly issued in compliance with the "no notice" provision found in rule 5.630(d).  Reliance on this rule is misplaced.  Rule 5.630(d) states in relevant part: "The application may be submitted without notice, and the court may grant the petition and issue a *temporary order*:  (1) In determining whether or not to issue the *temporary restraining order* without notice, the court must consider all documents submitted with the application and may review the contents of the juvenile court file regarding the child."  (Italics added.)  Because the "no notice" provision applies only to temporary restraining orders, reference to this subdivision is of no help to the People.[7]

In addition to his statutory rights, Jonathan's right to due process entitled him to advance notice of the People's request for a two-year restraining order, plus a meaningful opportunity to present evidence in opposition to that request, before the court could issue the restraining order.  (See *Babalola*, *supra*, 192 Cal.App.4th at p. 965 ["'[t]he essential requirements of due process . . . are notice and an opportunity to respond'"]; see also

---

[7]     To the extent any part of rule 5.630 is read or interpreted to dispense with the requirements of section 213.5, the statute prevails.  "'Rules promulgated by the Judicial Council may not conflict with governing statutes. [Citation.]  If a rule is inconsistent with a statute, the statute controls.' [Citations.]" (*People v. Guerra* (2016) 5 Cal.App.5th 961, 966; accord, *Kahn v. Lasorda's Dugout, Inc.* (2003) 109 Cal.App.4th 1118, 1123.)

*In re Large* (2007) 41 Cal.4th 538, 552 [purpose of requirement that parties be given "notice and the opportunity to be heard is to give them a chance to present information that may affect the decision"]; *Isidora M. v. Silvino M.* (2015) 239 Cal.App.4th 11, 22 [Due Process Clause requires that a party be given notice of, and time enough to permit adequate preparation for, an impending hearing].)

In *Babalola*, we considered a similar question concerning the sufficiency of notice prior to the issuance of a criminal protective order.  Babalola was charged in February 2010 with two counts of assault with a semiautomatic firearm.  The crimes took place on November 1, 2009.  Babalola appeared at all of his pretrial proceedings in March, April and May 2010.  In June, the People sought a criminal protective order pursuant to Penal Code section 136.2, subdivision (a).  Babalola was not charged with crimes involving domestic violence and, as of the time of the application in June, there was no good cause to believe Babalola had attempted either during or after the commission of the alleged aggravated assaults to intimidate or dissuade any of his victims.  The People had not previously sought a protective order "and no evidence was presented that any emergency existed in late June 2010 when the prosecutor finally submitted the request."  (*Babalola*, *supra*, 192 Cal.App.4th at p. 965.)  Under these circumstances, we noted that "Babalola was entitled at minimum to some notice that the request was going to be made so he could prepare for the hearing."  (*Ibid*.)

Similarly here, the People had not previously sought a protective order, Jonathan was released from home detention because he was doing well, and the prosecution did not present any evidence an emergency existed at the time the People sought

the restraining order.[8]  Jonathan, like Babalola, was entitled to some notice prior to the hearing so counsel and Jonathan could prepare for the hearing.

The People cite two cases in support of their position that same-day oral notice is adequate.  Both cases are distinguishable. In *Rayburn v. Stewart* (9th Cir. 1997) 132 F.3d 40, an unpublished memorandum opinion (reported in full at *Rayburn v. Stewart* (9th Cir. Dec. 15, 1997, No. 97-35150) 1997 U.S.App LEXIS 36061), Rayburn, a Washington state prisoner, brought a habeas petition alleging that his parole revocation proceeding lacked minimum due process.  The court found written notice of his alleged violation, "albeit on the same day that his suspended sentence was revoked," was sufficient to satisfy his "due process right to pre-revocation notice."[9]  (*Id*. at p. *3.)  The court affirmed

---

[8]    The People did not seek a temporary restraining order, presumably because there was no urgency for such an order, and the juvenile court did not issue a temporary restraining order. Indeed, the grounds offered by the People for the issuance of the two-year protective order did not demonstrate an emergency or the need to proceed without notice or a hearing.  The People sought issuance of the order based upon (1) the nature of the charges, (2) Jonathan's release from community detention, and (3) the fact that a restraining order was issued against another minor, presumably one of the other perpetrators involved in the robbery.

[9]    *Morrissey v. Brewer* (1972) 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] established the minimum due process requirements for revocation of parole.  These include: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to

11

the denial of the habeas petition finding that the proceedings complied with the due process requirements applicable to parole violation proceedings.

In the present case, Jonathan, who had successfully completed his community detention program, had no reason to believe the People would request a restraining order at his trial setting conference. Rayburn, on the other hand, knew the revocation hearing was forthcoming because it was based upon his prior termination from his treatment program. (*Rayburn v. Stewart*, *supra*, 1997 U.S.App LEXIS 36061, *3.) At his revocation hearing, Rayburn testified, as did his treatment provider and probation officer. (*Ibid.*) Unlike Rayburn, Jonathan was not provided with written notice, a description of the evidence to be used against him, a meaningful opportunity to be heard or an opportunity to present evidence in opposition to the People's request.

The second case relied on by the People is *Olson v. Arnett* (1980) 113 Cal.App.3d 59. *Olson* involved a personal injury suit over a motorcycle accident and settled shortly before the trial date. Thereafter, the settlement collapsed and the defendant moved for and was granted a bifurcated trial on the affirmative defense of accord and satisfaction. On the day of trial, the court

confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (*Id.* at p. 489.)

granted the defendant's request to file a cross-complaint for specific performance of the settlement agreement and damages for breach of that agreement.  Because the facts and circumstances surrounding the collapse of the settlement agreement were well known to the plaintiff and the plaintiff had been on notice for at least seven weeks that "there would be a defense based upon the settlement agreement," the appellate court found "no merit to [the plaintiff's] contention he was denied adequate notice by the filing of the cross-complaint and the commencing of the bifurcated trial on the same day." (*Id*. at p. 65.)

*Olson* has nothing in common with the present case.  *Olson* is not a juvenile case or a criminal case, nor does it involve a restraining order governed by statutory requirements.  Unlike counsel in *Olson*, who received more than seven weeks notice to prepare for the bifurcation hearing and was well aware of the settlement related defenses and claims, Jonathan's counsel was caught by surprise, and, therefore, unable to investigate the issues or present evidence in opposition thereto.

As the record shows, the People requested and the court issued the restraining order on the same day, February 10, 2016.  Jonathan's counsel objected, arguing she had not been given prior notice and, as a result, was unprepared to proceed in opposition to the request.  She asked the court to set an "actual" hearing date so she could prepare.  She emphasized the seriousness of the restraining order, given its duration and entry into the CLETS system.  Nonetheless, the juvenile court overruled the objections and issued the two-year restraining order.

While the specific amount of time necessary to satisfy the "notice" requirement is not delineated in section 213.5, more than

13

courtroom notice is required.[10] (See *Babalola*, *supra*, 192 Cal.App.4th at p. 965.) The issuance of a two-year restraining order has substantial consequences. A violation of such a restraining order could subject Jonathan to a new delinquency or criminal proceeding. A willful and knowing violation of a restraining order issued under section 213.5 is a misdemeanor punishable under Penal Code section 273.65, and, as a matter of evidence in any such proceeding, the entry of a CLETS report may be admissible under the official records exception to the hearsay rule. (*People v. Martinez*, *supra*, 22 Cal.4th at p. 134.) As counsel noted, issuance of the restraining order requires entry of the order into the CLETS system, which is available to all public law enforcement agencies, and may, as defense counsel argued, negatively impact a restrained party's ability to attend

---

[10] Reference to other rules concerning the timing for motions demonstrates that, absent grounds for an exception, such as urgency or an emergency, more than oral courtroom notice is required. For example, with respect to civil motions, Code of Civil Procedure section 1005, subdivision (b), provides that moving and supporting papers, in general, must be "served and filed at least 16 court days before the hearing." With respect to motions in juvenile court, the Superior Court of Los Angeles County, Local Rules, rule 7.16 (b), provides in pertinent part: "The moving party must serve the motion upon all other counsel in the case at least five calendar days but not less than three court days before the date of the hearing if served personally or by facsimile, and at least seven calendar days before the hearing if served by mail." With respect to criminal motions, California Rules of Court, rule 4.111 states in pertinent part, "all pretrial motions, accompanied by a memorandum, must be served and filed at least 10 court days" before the hearing.

school, obtain housing, apply for admission to the military, gain certain types of employment and obtain governmental benefits.[11] As counsel stated repeatedly, such consequences raise the stakes and underscore the need for notice and an opportunity for counsel to prepare for the hearing.

Because Jonathan was not provided with notice or a hearing on the People's application, the juvenile court erred by issuing the restraining order. Consequently, we reverse the order.[12]

## DISPOSITION

The order is reversed.

---

[11] Government Code section 15153 states that CLETS "shall be under the direction of the Attorney General, and shall be used exclusively for the official business of the state, and the official business of any city, county, city and county, or other public agency." While defense counsel did not present evidence establishing that the issuance of a CLETS order has the effects described by counsel, nonetheless, the point concerning the actual and potential impact of such an order is well taken.

[12] In so doing we note that our decision does not preclude the juvenile court from entering a new restraining order against Jonathan should circumstances warrant it, provided he is afforded the notice and hearing required under subdivision (d) of section 213.5, and is still a ward of the court and on probation for the offense giving rise to the underlying delinquency proceeding. (See rule 5.630 [party may request a restraining order any time after a Welf. & Inst. Code, § 602 petition has been filed, and until wardship is terminated or the ward is no longer on probation].)

BENSINGER, J.*

We concur:

ZELON, Acting P. J.

SEGAL, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16