Filed 6/20/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of MANISHKUMAR and PRIYANKA ANKOLA. | H045899<br>(Santa Clara County<br>Super. Ct. No. 15FL173072) |
| MANISHKUMAR ANKOLA,<br><br>    Appellant,<br><br>    v.<br><br>PRIYANKA ANKOLA,<br><br>    Respondent. | |

Petitioner Manishkumar Ankola (Manish)[1] appeals the issuance of a mutual restraining order against him under the Domestic Violence Protection Act (Fam. Code, § 6200 et seq., DVPA).[2] The mutual restraining order was issued on a petition brought by Manish against his wife, respondent Priyanka Ankola (Priyanka).

Manish argues the trial court erred in issuing a mutual restraining order when Priyanka had not filed a separate written request for such an order as required by section 6305, subdivision (a)(1). We agree and will reverse the April 18, 2018 restraining order against Manish.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Manish and Priyanka were married on June 12, 2014, but their relationship quickly soured. Manish filed a petition for nullity of marriage on December 15, 2015, alleging

---

[1] Mr. Ankola refers to himself in his briefing with the shortened version of his first name, so we have adopted it as well.

[2] Unspecified statutory references are to the Family Code.

that the marriage was voidable based on fraud. Priyanka filed a response, denying the allegations in Manish's petition, but further requesting dissolution of the marriage due to irreconcilable differences.[3] In May 2016, Priyanka filed a request for a domestic violence restraining order (DVRO) against Manish.

After several continuances, Manish's petition for nullification and Priyanka's request for a DVRO proceeded to a bifurcated trial on September 7, 2016. The trial court denied both the petition and the request for a DVRO, finding that the parties had failed to meet their respective burdens of proof.

In February 2017, Priyanka filed a new request for a DVRO against Manish based on facts which had arisen since the September 2016 hearing. Following a hearing in June 2017, the trial court granted Priyanka's request and issued a DVRO with a five-year duration. The DVRO against Manish was filed on August 15, 2017 (the August 15, 2017 DVRO).[4]

On August 16, 2017, Manish filed his own request for a DVRO against Priyanka. Priyanka filed a written response to Manish's DVRO request, denying each of the allegations set forth therein, but she did not file a separate request for another DVRO against Manish. The contested hearing on Manish's request was held on February 20, 2018.

At the hearing, Manish testified that he met Priyanka in August 2013 and they were married in June 2014. Manish had two children from a prior marriage. Manish described several incidents in which Priyanka got angry with him and hit him. When asked why he was seeking a protective order, Manish said, "She has been an angry woman all the time. And we had a lot of incidences [*sic*] where—like when she has hit

---

[3] The register of actions included as part of Manish's appendix indicates that a status-only judgment was entered on November 19, 2018.

[4] Manish's separate appeal from this order (case No. H045092) is currently pending in this court.

2

me. She has threatened to kill me. She has tried to run me over with her car, at one point. She's threatened to hurt my kid. She hates my kid. And I'm afraid if something goes wrong in her life she's going to come after me or hurt my kid." According to Manish, Priyanka also said "bad things" about him to other people, e.g., accusing him of being impotent, having sexually transmitted diseases, engaging in human trafficking, etc. Manish denied committing any acts of domestic violence, including rape,[5] against Priyanka at any time.

On cross-examination, Manish admitted sending a letter[6] to Priyanka's employer in February 2017 in which he stated that his marriage to Priyanka was a "fraud" and that she "made up a lot of things on her resume, her educational background, and work experience are also fake."

Priyanka testified and said that, following her marriage to Manish, he became "more controlling" of her, threatening that her "immigration [status] is in his hands." Priyanka denied ever hitting Manish but admitted that on two of the occasions where Manish said she hit him, she did push him away because he was too close to her.

After the matter was submitted, the trial court noted that "this is round three of the Court hearing about this marriage. [¶] . . . [¶] I am going to make a finding under Family Code Section 6305 that each party has committed acts of domestic violence. And I am going to enter a mutual restraining order." As to Priyanka, the trial court found that Manish "committed acts of domestic violence. The letter to [Priyanka's employer], with all of its attachments was uncalled for and is intended to disturb the peace of [Priyanka]. It is a threat and constitutes an act of domestic violence." As required by section 6305,

---

[5] Manish's counsel elicited this answer by asking Manish "[Priyanka] said some things in court about you, for example, that you raped her, didn't she?"

[6] The letter, with attached exhibits, was marked for identification, but not admitted into evidence. The court described it as a "package of material, . . . about 80 to 100 pages." As we conclude that the trial court lacked the authority to impose a mutual restraining order, the failure to admit these materials into evidence is irrelevant.

the trial court further found that neither party "was primarily acting out of self-defense, and that each party committed acts of domestic violence."

On April 18, 2018, the trial court entered the DVRO against Manish.[7] Manish timely appealed.

## II.    DISCUSSION

### A.    *The trial court's authority to issue mutual restraining orders*

Manish argues the trial court lacked the authority to issue a mutual restraining order under section 6305 because Priyanka did not file her own separate request for a restraining order prior to the contested hearing.  We agree.

Because "a trial court has broad discretion in determining whether to grant a petition for a restraining order under [the DVPA]," we normally review the trial court's decision to issue such a restraining order for an abuse of discretion.  (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.)  However, where the question on appeal presents a matter of statutory construction, we apply a de novo standard of review.  (*Isidora M. v. Silvino M.* (2015) 239 Cal.App.4th 11, 16 (*Isidora M.*).)

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute.  [Citation.]  We begin with the language of the statute, giving the words their usual and ordinary meaning.  [Citation.]  The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.]  In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.]  If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the

---

[7] The record does not include a copy of the DVRO issued in favor of Manish against Priyanka.

legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)

Section 6305, subdivision (a) provides, "The court shall not issue a mutual order enjoining the parties from specific acts of abuse described in Section 6320 unless both of the following apply: [¶] (1) Both parties personally appear and each party presents written evidence of abuse or domestic violence in an application for relief using a mandatory Judicial Council restraining order application form. For purposes of this paragraph, written evidence of abuse or domestic violence in a responsive pleading does not satisfy the party's obligation to present written evidence of abuse or domestic violence. . . . [¶] (2) The court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense."

We are concerned here only with the criterion set forth in section 6305, subdivision (a)(1),[8] which itself consists of two subparts: (1) both parties must personally appear; and (2) "each party [must] present[] written evidence of abuse or domestic violence *in an application for relief using a mandatory Judicial Council restraining order application form*." (§ 6305, subd. (a)(1), italics added.) Since there is no dispute that both parties appeared in this case, we turn to whether each party presented written evidence of abuse or domestic violence in the specified restraining order application form. The answer is no. Only Manish presented an application for a DVRO in connection with the February 20, 2018 hearing. Priyanka filed a *response* to Manish's application, but did not file a separate application for a restraining order against Manish.

---

[8] The second criterion, set forth in section 6305, subdivision (a)(2) and describing the trial court's duty to make findings of fact on specific questions, is not at issue in this case.

*Isidora M.*, *supra*, 239 Cal.App.4th 11, on which Manish principally relies, is instructive even though it addresses a prior version of section 6305, which was operative at the time the appellant in that case sought her restraining order. The court in *Isidora M.* conducted a lengthy analysis of the language of former section 6305 and concluded that it precluded issuance of a mutual restraining order unless both parties had filed written requests for such an order. (*Isidora M.*, *supra*, 239 Cal.App.4th at p. 19.) The appellant in *Isidora M.* sought a restraining order in 2014 against her husband based on allegations that he had threatened to kill her. (*Id.* at p. 15.) The husband responded to appellant's request, presenting evidence that appellant was already restrained due to a criminal protective order, but the husband did not submit his own application for a restraining order against appellant. (*Id.* at pp. 14-15.) Following the hearing, the trial court issued a mutual restraining order, finding that it had jurisdiction to enter an order restraining appellant because husband had filed responsive papers. (*Id.* at pp. 15-16.)

The Court of Appeal reversed. Former section 6305 provided: "The court may not issue a mutual order enjoining the parties from specific acts of abuse . . . (a) unless both parties personally appear and each party presents written evidence of abuse or domestic violence and (b) the court makes detailed findings of fact indicating that both parties acted primarily as aggressors and that neither party acted primarily in self-defense." (Stats. 1995, ch. 246, § 2, p. 852.) Construing this version of the statute within the context of the DVPA, the appellate court concluded that a mutual restraining order could be issued only where both parties had "filed requests for such relief, so as to give the requisite notice to the opposing party." (*Isidora M.*, *supra*, 239 Cal.App.4th at p. 19.)

Priyanka contends that *Isidora M.* is distinguishable because the appellant in that case was subject to a criminal protective order, rather than a DVRO, but this is a distinction without a difference. The holding in *Isidora M.* turned on questions of notice and due process, not the nature of the existing restraining order.

6

We further reject Priyanka's reliance on the maxim of jurisprudence set forth in Civil Code section 3523 which provides that, "[f]or every wrong there is a remedy." In this case, it is not that Priyanka has no remedy; rather, it is that she must first adhere to the procedural requirements set forth in the DVPA before she obtains that remedy.

Of course, section 6305 was amended in 2015, essentially codifying the holding in *Isidora M*., and now expressly provides that a trial court may issue a mutual restraining order only where *both* parties have submitted applications for such relief. (Stats. 2015, ch. 73, § 1, pp. 1529-1530.) The 2015 amendment further precluded trial courts from considering evidence of abuse or domestic violence in a responsive pleading as meeting that party's obligation to present a separate application for a restraining order. (Stats. 2015, ch. 73, § 1, pp. 1529-1530.) In this case, Priyanka did not submit a separate request for a restraining order as required by section 6305, subdivision (a)(1), and thus the trial court erred in issuing a mutual restraining order in her favor.

### B. The trial court's authority to modify its prior DVRO

We now briefly consider whether the April 18, 2018 DVRO against Manish could be construed as a modification of the August 15, 2017 DVRO Priyanka had previously obtained against him.

The rule is that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (Code Civ. Proc., § 916, subd. (a).) The purpose of the automatic stay "is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided." (*Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629.) "In determining whether a proceeding is embraced in or affected by the appeal, we must consider the appeal and its possible outcomes in relation to the proceeding and its possible results." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.) A postjudgment proceeding that is

7

ancillary or collateral to the appeal is not stayed "if the proceeding could or would have occurred regardless of the outcome of the appeal." (*Id*. at p. 191.) If the postjudgment proceedings would not affect the effectiveness of the appeal, the proceedings are permitted. (*Id*. at p. 189.)

There is no indication in the record on appeal that the trial court intended its mutual restraining order to modify the August 15, 2017 DVRO. Even if it had that intent, however, the trial court lacked the jurisdiction to do so. In the instant case, Manish appealed from the August 15, 2017 DVRO on August 31, 2017 and that appeal is currently pending in this court. Treating the April 18, 2018 restraining order against Manish as a modification of the August 15, 2017 DVRO would alter the status quo and render moot Manish's appeal in case No. H045092.

## III.    DISPOSITION

The April 18, 2017 domestic violence restraining order against Manish is reversed. In the interests of justice, the parties shall bear their own costs on appeal.

_____
                        Premo, J.

WE CONCUR:


_____
        Greenwood, P.J.


_____
            Elia, J.


Marriage of Ankola
H045899

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 15FL173072 |
|---|---|
| Trial Judge: | Hon. James E. Towery |
| Counsel for Petitioner:<br>Manishkumar Ankola | Law Offices of Adam R. Bernstein<br>Adam R. Bernstein |
| Counsel for Respondent:<br>Priyanka Ankola | Law Office of Peter A. Lindstrom<br>Peter A. Lindstrom |

Marriage of Ankola
H045899