Filed 11/10/22  Cortez v. Conley CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| JOSE CORTEZ, | |
| Plaintiff and Respondent, | E077546 |
| v. | (Super. Ct. No. CIVSB2112728) |
| SHERYL CONLEY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Affirmed.

The Haynes Law Firm, Crista Haynes and Mary Ann Boulton, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

I.

INTRODUCTION

Sheryl Conley appeals the trial court's three-year civil harassment restraining order that her neighbor, Jose Cortez, obtained against her.  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2021, Cortez filed a request for a civil harassment restraining order against Conley, a neighbor who has to pass through his property to get to her house. In his application, Cortez explained that Conley has a restraining order against his wife that allows Conley to pass through his property in order to go to and from her property.

Cortez stated in his application that Conley and her tenants had been harassing him and his family for nearly six months. At some undisclosed time, a large man brandished his gun to Cortez from inside Conley's property. Cortez's dogs have been shot and limp because of Conley's "illegal activities." Conley also screams "foul stuff" at Cortez and his family and "bring[s] out her thugs to threaten [him]." The most recent harassment occurred about a week before Cortez filed his request. He claimed that while he "was filming," Conley told him that her "son is a cop and he will find you." Cortez "[n]ow live[s] in constant fear even outside [his] house."

Cortez thus sought a restraining order against Conley with various conditions, including prohibiting her from parking on his property, stopping "illegal transportation of unknown substances" on his property, and to ordering her to stay away from him, his family, his workplace, and his children's school.

The trial court held a hearing on Cortez's application during which he testified and Conley was represented by counsel. Cortez testified that people on Conley's property say rude things to him "[e]very time they go by" and he feels threatened every time he leaves

his house.  He has had to take his dogs to the veterinarian several times because someone on Conley's property (potentially her nephew) shot them with "BB guns."  He feels especially threatened by Conley because she threatened to call her son, a police officer.

Conley's counsel denied that Conley or anyone on her property ever threatened Cortez or his wife.  She argued that Cortez's application was merely in retaliation for Conley obtaining a three-year restraining order against Cortez's wife.  Conley sought and obtained the restraining order because she needs to pass through the Cortezes' property to access her house, but the Cortezes physically threatened her and put boulders in the road to prevent her from getting home.

The trial court explained that it would enter a "no-negative contact" restraining order, meaning Conley must stay at least 100 feet away from Cortez and cannot yell threatening or harassing things at him.  The court explained its order would have the effect of a mutual restraining order given Conley's restraining order against Cortez's wife.

Conley's counsel objected.  She argued that Cortez had not met his burden of proof that Conley was a threat to him because he provided no "credible proof" that Conley had "done anything other than to try to protect herself."  The trial court disagreed, stating that it had received testimony from Cortez that he felt threatened by Conley and people on her property.  Conley's counsel again objected on the ground that Cortez's testimony was not credible because he could not identify the allegedly threatening people

3

on Conley's property. The trial court explained that it found Cortez's testimony credible and would grant his request for a restraining order.

After the hearing, the trial court issued a written three-year restraining order. The order states it is a "no negative contact" restraining order that requires Cortez to stay 100 feet away from Cortez, his wife, and his children. Conley also may not harass or contact Cortez and his family in any way.

Conley timely appealed.

III.

DISCUSSION

Conley raises three arguments on appeal. None of them has merit.

First, Conley incorrectly argues there was no hearing on Cortez's restraining order and thus she was not able to provide testimony in her defense. The trial court held a hearing on Cortez's request for a restraining order during which he testified and Conley was represented by counsel. Conley's counsel never suggested that Conley wanted to testify.

Second, Conley argues Cortez did not meet his burden of proof. We disagree. The trial court may issue a civil harassment restraining order against a person who has harassed or threatened the applicant if that person's conduct has no legitimate purpose and is not constitutionally protected. (See *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) We review the trial court's order for substantial evidence. (*Ibid*.)

4

Cortez stated in his application and testified at the hearing that he felt threatened by Conley. The trial court expressly stated that he found Cortez to be credible. We must defer to that factual finding. See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 106 ["'The trial court was the trier of fact and the sole judge of the credibility of witnesses.'"]; *People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 [assessing witness credibility is "the exclusive function of the trier of fact"].) Cortez's testimony provided the substantial evidence necessary for the trial court to issue the restraining order. (See *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 ["The testimony of one witness, even that of a party, may constitute substantial evidence."].)

Third and finally, Conley argues the trial court erroneously entered a mutual restraining order. She claims the trial court erred in doing so because the court did not make factual findings mandated by statute, including that both she and Cortez were a primary aggressor. Conley's argument rests on authority pertaining to domestic violence restraining orders issued in family law proceedings. (See Fam. Code, § 6305; *Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 226; *Isidora M. v. Silvino M.* (2015) 239 Cal.App.4th 11, 17.) She cites no authority suggesting that those standards apply to the trial court's civil harassment restraining order.

In any event, the trial court did not issue a mutual restraining order. Its order restrains Conley only. The court's statement at the hearing that the order was a "mutual restraining order" that Conley focuses on simply pointed out that its restraining order

would have the effect of a mutual restraining order "at the end of the day" because of Conley's restraining order against Cortez's wife.

IV.

DISPOSITION

The trial court's restraining order is affirmed.  Cortez may recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.

6