Filed 2/17/23  Ankola v. Ankola CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MANISHKUMAR ANKOLA, <br><br> Petitioner and Appellant, <br><br> v. <br><br> PRIYANKA ANKOLA, <br><br> Respondent. | B322550, B322558, B322562 <br><br> (Santa Clara County <br> Super. Ct. No. 15FL173072) |

APPEAL from a judgment of the Superior Court of Santa Clara County, James E. Towery, Judge.  Affirmed.

Manishkumar Ankola for Petitioner and Appellant.

No appearances for Defendant and Respondent.

# INTRODUCTION

These are three appeals[1] arising from a judgment of dissolution. Petitioner Manish[2] Ankola challenges numerous rulings by the trial court below; specifically: 1) the court erred in its ruling on the parties' date of separation; 2) the court abused its discretion in denying Manish's motion to compel and request for terminating and/or monetary sanctions; 3) the court abused its discretion in denying temporary spousal support to Manish; 4) the court abused its discretion in denying attorney's fees to Manish as a prevailing party in domestic violence restraining order proceedings; and 5) the court exhibited bias against him during the trial on property issues, necessitating different orders or a remand for a new trial.[3]

---

[1] On the court's own motion, the appeals were ordered to be considered together for purposes of briefing, oral argument, and disposition. They were then transferred from the Sixth Appellate District to the Second.

[2] Petitioner refers to himself throughout his brief as "Manish" and we do the same. No disrespect is intended.

[3] Although Manish sets forth additional rulings in his three notices of appeal and three additional amended notices of appeal, and references facts relating to some of these other rulings in his statement of facts, his opening brief is limited to the issues referenced above. An "appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) "Courts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.)

Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Manish filed a petition for nullity on December 15, 2015 alleging that his marriage to respondent Priyanka Ankola was voidable based on fraud.[4]  He stated that the date of marriage was June 12, 2014, and the date of separation was November 30, 2015.  Priyanka filed her response seeking a dissolution of the marriage and claiming the date of separation as October 4, 2015.

### 1.  Prior appellate proceedings

This case has already resulted in two published opinions arising from at least four prior appeals.  (*In re Marriage of Ankola* (2019) 36 Cal.App.5th 560 (*Ankola I*) and *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369 (*Ankola II*).)  As relevant to the issues in the present appeals, we will summarize the facts from those two opinions briefly.

In *Ankola I*, the Court of Appeal reversed the grant of a mutual domestic violence restraining order where the statutory requirements were not met.  Priyanka filed a request for a domestic violence restraining order (DVRO) in May 2016.[5] (*Ankola I, supra*, 36 Cal.App.5th at p. 563.)  After several continuances, the trial on the DVRO and on Manish's petition for

---

[4] Priyanka Gupta was formerly known during the marriage as Priyanka Ankola.  As with her former husband, we will refer to her by her first name for ease of reference, with no disrespect intended.

[5] The record reveals that while Priyanka filed her first request for DVRO in May, a second one was filed by her in July 2016.  Manish claims the May request was never served.  For ease of reference, we refer to the one filed in July–which is the first one that actually went to hearing–as her "first" DVRO.

nullity came on for hearing in September 2016. The trial court denied both Manish's request to declare the marriage a nullity and Priyanka's request for a DVRO. (*Ibid.*)

In February 2017, Priyanka filed a second request for a DVRO, which was granted by the trial court on August 15, 2017 (the August 2017 DVRO) for the maximum allowable period of five years. (*Ankola I, supra*, 36 Cal.App.5th at p. 563.)

The very next day, August 16, 2017, Manish filed his own request for a DVRO against Priyanka. (*Ankola I, supra*, 36 Cal.App.5th at p. 563.) While Priyanka filed a response, she did not file a separate application for another DVRO. (*Ibid.*)

Manish's request for a DVRO came on for hearing in 2018. After the matter was submitted, the trial court found " 'under Family Code section 6305 that each party has committed acts of domestic violence' " and that neither party was " 'primarily acting out of self-defense,' " and thus ordered mutual restraining orders against Priyanka and Manish. (*Ankola I, supra,* 36 Cal.App.5th at p. 564.) In April 2018, the trial court entered the second DVRO against Manish (the April 2018 DVRO).[6] (*Ibid.*)

The Court of Appeal reversed the April 2018 DVRO against Manish, reasoning that the criteria set forth in Family Code section 6305, subdivision (a)(1) had not been met. Specifically, as to the second DVRO, Priyanka had not filed a second request for restraining order using a Judicial Council restraining order application form. (*Ankola I, supra*, 36 Cal.App.5th at pp. 565–

---

[6] A DVRO was issued against Priyanka the same day. The DVRO against her was not referenced in that appeal although the record reflects that she separately tried to appeal or set aside that order.

4

567.) The appellate court further rejected the argument that the April 2018 DVRO was a modification of the August 2017 DVRO, which was by then the subject of a separate appeal. (*Id.* at p. 567.) The court ordered that "the parties shall bear their own costs on appeal." (*Id.* at p. 568.)

In *Ankola II*, the appellate court ruled on three appeals relating to various rulings of the lower court as of that date. It first affirmed the five-year August 2017 DVRO against Manish, finding substantial evidence supported the order.[7] It also affirmed the trial court's ruling denying Manish's petition for nullity and granting a judgment of dissolution instead. (*Ankola II*, *supra*, 53 Cal.App.5th at p. 372.)

The appellate court reversed, however, the trial court's ruling rescinding a prior award of attorney's fees in Manish's favor.[8] (*Ankola II*, *supra*, 53 Cal.App.5th at pp. 372–373.) The facts leading to this conclusion were as follows. Subsequent to the hearing on the first request for DVRO filed by Priyanka, which was *denied* by the trial court in September 2016, the court

---

[7] Among other things, the *Ankola II* court found that Priyanka's evidence that Manish had stalked her by moving into an apartment " 'directly next door' " to hers after she had moved out, as well as sending numerous emails to her after she had asked him to stop communicating with her or her family, was substantial evidence supporting the issuance of the DVRO. While Manish claimed he did not know Priyanka was still living in that complex at the time he moved in, the trial court rejected his testimony, finding that Manish " 'lied repeatedly on significant points.' " (*Ankola II*, *supra*, 53 Cal.App.5th at p. 380.)

[8] While Manish is self-represented on appeal, at various times in the lower court he had counsel representing him.

held a separate hearing on Manish's request for attorney's fees as a prevailing party in that DVRO action. In March 2017 the court granted Manish's request in the amount of $10,000. (*Id*. at pp. 373–374.)

After Priyanka obtained the August 2017 DVRO against Manish, she then moved for attorney's fees as a prevailing party in that proceeding. (*Ankola II*, *supra,* 53 Cal.App.5th at p. 374.) In October 2017 the court both awarded fees to Priyanka (in the amount of $10,562.50) and rescinded the $10,000 fees it had previously awarded to Manish. (*Ibid*.) Explaining its order rescinding Manish's fee award, the trial court had stated that it " 'recall[ed]' " the first DVRO request that Priyanka filed and was " 'sorry, in retrospect, [that the court] denied it.' " (*Id*. at p. 382.) The court further referenced Manish's " 'untruthful testimony' " on the witness stand in connection with the August 2017 DVRO. (*Ibid*.)

The Court of Appeal held this was reversible error because the basis of the trial court's rescission of Manish's attorney's fee award was *new* evidence, rather than the evidence presented at the original proceeding. Thus, the court had effectively and improperly granted a new trial, sua sponte. (*Ankola II, supra,* 53 Cal.App.5th at pp. 383–384.)

The *Ankola II* court granted Priyanka her costs on the two appeals she prevailed on. But it ordered the parties to bear their own costs on the appeal Manish prevailed on. (*Id*. at p. 390.)

**2. Manish's request for attorney's fees in connection with DVRO proceedings**

The opinion in *Ankola I, supra,* 36 Cal.App.5th 560 was issued in June 2019. The following September, Manish filed in the trial court a request for order (RFO) for attorney's fees and

6

costs in the amount of $36,059 for having prevailed in the DVRO against Priyanka (the April 2018 DVRO) and for the mutual DVRO "reversed on appeal."

Manish sought $15,868 in connection with the underlying trial on the April 2018 DVRO, $17,900 for attorney's fees expended on the *Ankola I* appeal, and $2,291 for opposing Priyanka's motion to set aside the DVRO against her.

The hearing on Manish's motion for fees was held in November 2019. The court denied the motion. At oral argument, the court articulated its reasoning as follows: 1) the Court of Appeal did not make any order for attorney's fees on appeal; 2) the trial court had already made a finding that neither party was a prevailing party at the hearing on the mutual DVRO and did not intend for either party to be awarded fees relating to that April 2018 DVRO hearing; 3) it would be inequitable to require Priyanka to pay Manish's fees from the second DVRO, given that there was at the time a five-year DVRO against Manish; and 4) the court had already denied Manish's request for fees in connection with the hearing on Priyanka's request to set aside the DVRO against her.

### 3. Motion for terminating and monetary sanctions

While the various appeals were pending, discovery was ongoing. Multiple motions to compel were filed. In August 2019, Manish filed a motion for terminating sanctions, to compel further responses and production of documents, and for monetary sanctions against Priyanka and her counsel.

This motion was also heard at the November 2019 hearing. The trial court denied the motion on the grounds that it was untimely and that Priyanka "used good faith to provide reasonable responses to the best of her ability."

7

### 4. Manish's requests for temporary spousal support

Manish first requested temporary spousal support in February 2019. The trial court denied the request in March 2019.

In November 2020, Manish again requested temporary spousal support. The trial court again denied the request.

### 5. The trial on property issues and date of separation

At a status conference in November 2020, Manish stated he was not ready for trial and sought a continuance. The trial court granted the request and set trial for January 2021. The court's estimate was two hours. Manish claims that he requested a two-day trial and named four witnesses.[9]

Manish then filed a motion in limine seeking to exclude any evidence that had not been provided in Priyanka's discovery responses or in her trial brief. The court heard the motion on the day of trial and deferred ruling on it until "conclusion of trial." The trial took place over a period of approximately two hours and thirty-five minutes with a twenty-minute break. The court issued its tentative statement of decision finding the date of separation to be December 15, 2015 and making various orders regarding property division. Manish filed objections to it, and the

---

[9] Manish does not cite to anything in the record for this proposition, although we assume for the sake of argument that it is true. The trial brief Manish filed on January 4, 2021 did state an estimate of two days but this was filed after the hearing of November 2020. In that same brief, he named both parties as witnesses, as well as "Amit Bhatnagar" to testify about "facts related Parties' marital relationship [sic], before and after, and characterization of some assets."

court then issued its final statement of decision, which did not differ from the proposed draft.

## DISCUSSION

### A. Competing Rules of Court

Several of Manish's contentions on appeal (the date of separation and on the character and division of property) involve the sufficiency of the evidence to support the court's findings. However, in the statement of facts in his opening brief relating to these issues, Manish has recited only those facts that are favorable to his position. Such conduct is not to be condoned. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1530–1531.) " 'It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings.' " (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.)

Normally, we would find Manish's claims challenging the sufficiency of the evidence waived due to this failure. (*Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1165–1166; Cal. Rules of Court, rule 8.204(a)(2)(C).)

In this case, however, there is a competing rule under which, if the respondent fails to file a respondent's brief, "the court may decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).) Under a prior iteration of that rule, courts could accept as true the statement of facts in the appellant's opening brief in the absence of a respondent's brief. (*Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 593, fn. 2.) Even in such a case, however, the reviewing court must examine the record and reverse only if prejudicial error is found. (*Ibid.*) Although the statute's language has changed, we deem the import of the

9

competing rules as remaining the same.  Therefore, we will not deem Manish's sufficiency of the evidence claims waived in light of Priyanka's failure to file a respondent's brief.

## B. The trial court did not err in finding the date of separation to be December 15, 2015

### 1. Standard of review

"Date of separation is a factual issue to be determined by a preponderance of the evidence."  (*In re Marriage of Manfer* (2006) 144 Cal.App.4th 925, 930.)  " 'Our review is limited to determining whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' "  (*Ibid.*)

### 2. Substantial evidence supports the trial court's ruling

The date of separation can be relevant in certain cases largely because the "earnings and accumulations" of a spouse after the date of separation are the separate property of that spouse.  (Fam. Code, § 771, subd. (a).)

The date of separation occurs "when either of the parties *does not* intend to resume the marriage *and* his or her actions bespeak the finality of the marital relationship."  (*In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, 451.)  "All factors bearing on either party's intentions 'to return or not to return to the other spouse' are to be considered. [Citation.]  No particular facts are per se determinative."  (*Id.* at p. 452.)  *The ultimate question to be decided in determining the date of separation is whether either or both of the parties perceived the rift in their relationship as final.*  The best evidence of this is *their words and actions*."  (*Id.* at p. 453.)

10

The trial took place on January 12, 2021, one of the dates for which there is no transcript.[10] In the absence of a transcript, we look at the parties' respective trial briefs. There, Manish argued that the date of separation was December 26, 2015 while Priyanka argued the date should be October 4, 2015. Manish filed his petition for nullity on December 15, 2015, stating the date of separation to be November 30, 2015.[11] Manish stated in his trial brief that he served his nullity petition on Priyanka on December 30, 2015.

The trial court found the date of separation to be December 15, 2015, rejecting both parties' proposed dates, but finding it to be closer to Manish's date than Priyanka's. The trial court noted that Priyanka consulted with an attorney prior to December 2015, never intended to resume her marriage, and moved her furniture out of the family residence on October 4, 2015; on the other hand, she admitted to having sexual relations with Manish on two occasions after that date. The trial court concluded that "the testimony of both parties was contradictory on the date of separation" and that "[t]here was inconsistent behavior by both parties regarding this issue. In considering the evidence as a whole, the Court finds the date of separation to be December 15,

---

[10] As reflected in the clerk's certificate in B322562 dated 8/5/21: "per minute orders dated 11/4/20, 12/16/20, and 1/12/21[,] [n]o [c]ourt [r]eporter was present at these [h]earing dates" and thus the reporter's transcripts for those dates "will not be part of the [r]ecord."

[11] Recitations in a petition may be considered as evidence but are not conclusive as to date of separation. (*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 657.)

11

2015, which was the date that [Manish] filed the Nullity Petition."[12]

As noted, there is no reporter's transcript of the trial proceedings.  (See Cal. Rules of Court, rule 8.120(b) ["If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include [either a reporter's transcript, an agreed statement, or a settled statement"]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct*"].)  "The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence."  (*Estate of Fain,* at p. 992.)

There is no error apparent on the face of the record.  In the absence of a transcript, the decision reached by the trial court must be presumed correct.  Moreover, even if we reach the question on the merits, and mindful that our job is not to reweigh

---

[12] Manish contends that 1) the "status only" judgment (which adjudicated the status of the marriage being dissolved only) which was entered previously in this case improperly included October 4, 2015 as the day of separation and 2) a stipulation regarding the date of separation being December 15, 2015 was entered into by his attorney without his consent in April 2019.  However, it is evident from the court's statement of decision that the court neither held Manish to the date listed in the status only judgment nor referenced the prior stipulation regarding December 15, 2015, but rather allowed both parties to present evidence that the date of separation was a different date than the one entered or stipulated to.

the evidence in the way that appellant believes is most persuasive to his claim, but to review the entirety of the available record including all evidence presented by both sides, we find that the factual determination as to the date of separation by the court is supported by substantial evidence.

Finally, even if substantial evidence did not support the trial court's date of separation, Manish does not set forth any consequences to the parties arising from the trial court selecting December 15 over December 26—a date only 11 days later. His brief contains no reference to any way in which Manish was harmed by the court's selecting the first date over the other. (Cf. *Manfer, supra,* 144 Cal.App.4th at p. 929 ["[b]ecause '[t]he earnings and accumulations of a spouse . . . while living separate and apart from the other spouse, are the separate property of the spouse' [citation], the date of separation can be of considerable consequence with regard to the parties' property rights"].)

An appellant has the burden not only to show error but prejudice from that error. (Cal. Const., art. VI, § 13.) If an appellant fails to satisfy that burden, his argument will be rejected on appeal.

We affirm the trial court's ruling on the date of separation.

## C. Manish's request for attorney's fees incurred in the DVRO proceedings

### 1. Standard of review

We apply the abuse of discretion standard when reviewing the amount of an attorney's fees award. (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1509.) " '[A]n experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court . . .' [Citation.] 'The only proper basis of reversal of the amount

of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' " (*Ibid.*) Similarly, a trial court's determination of a party's entitlement to attorney's fees is also subject to review for abuse of discretion. (*Canyon Crest Conservancy v. County of Los Angeles* (2020) 46 Cal.App.5th 398, 408–409 [" 'Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the discretion of the trial court, unless the question turns on statutory construction, which we review de novo' "].)

We do not review the trial court's reasoning, but rather its ruling. "A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct." (*Loeffler v. Medina*, *supra*, 174 Cal.App.4th at p. 1504, fn. 11.)

## 2. The trial court did not abuse its discretion

At issue here is Manish's request for attorney's fees and costs in the amount of $36,059 for having obtained a DVRO against Priyanka (the April 2018 DVRO) and for getting the mutual DVRO against him reversed on appeal, which had also been issued in April 2018.[13] The motion also requested fees for opposing Priyanka's motion to set aside the DVRO issued against her.

---

[13] The underlying attorney's fees orders that were previously granted by the trial court (the $10,000 to Manish that was erroneously rescinded and then reinstated by the Court of Appeal, as well as the $10,562.50 awarded to Priyanka) are not at issue in these appeals and presumably, if they have not already been offset in part and paid, will be part of the final calculations regarding who owes what to whom.

14

Under the Domestic Violence Prevention Act, a court shall award attorney fees and costs for a prevailing petitioner, subject to a determination that the party ordered to pay has or is reasonably likely to have, the ability to pay. (Fam. Code, § 6344.)[14]

As an initial matter, we agree with Manish that the court reached some erroneous conclusions. First, we agree that the *Ankola I* court's decision that each party shall bear their own costs is not determinative of whether the trial court could have granted attorney's fees based on Manish's successful appeal of the April 2018 DVRO. California Rules of Court, rule 8.278, which sets forth the general rule for costs to the prevailing party on appeal, provides that: "In the interests of justice, the Court of Appeal may also award or deny costs as it deems proper." (*Id.* at subd. (a)(5).) It further provides: "Unless the court orders otherwise, an award of costs neither includes attorney's fees on appeal nor precludes a party from seeking them under rule 3.1702." (*Id.* at subd. (d)(2).) In other words, the decision about costs on appeal is entirely separate from a decision about the entitlement to attorney's fees on appeal. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 927.) To collect appellate attorney's fees, "a party must demonstrate the right to do so under either a statute or a contract." (*Ibid.*)

---

[14] This code section was amended effective January 1, 2023. However, under the version of Family Code section 6344 that was in effect at the time of the hearings below, the language, while different, still required that in the case of either a prevailing petitioner or respondent a court was to consider the parties' respective abilities to pay. (Former Fam. Code, § 6344 subd. (b).)

15

We also agree that, as it relates to the fees sought for obtaining his DVRO against Priyanka, as a prevailing petitioner, Family Code section 6344, subdivision (c) requires a court to consider the parties' financial circumstances. Here, the court considered the issue "irrelevant."

However, we do not find either of these errors to require reversal of the court's denial of fees in this case. When we are able to determine from the record that even if the lower court had applied the correct standard, it would have reached the same result, the error does not mandate reversal. (*Loeffler v. Medina, supra,* 174 Cal.App.4th at p. 1504, fn. 11 ["to the extent the trial court erred in applying the wrong standard, that error is harmless because . . . the trial court made factual findings that we are able to apply to . . . determine that, had the trial court applied the correct standard, it would have reached the same result"].)

Here, the record reveals that these errors were harmless.

### a. Fees for reversing the DVRO against Manish in the Court of Appeal

As for the fees spent in the Court of Appeal reversing the mutual restraining order against Manish, we find that the record adequately shows that the court would have denied fees even without its erroneous conclusion that the appellate court ruled that each side should bear its own costs.

In the posture of receiving attorney's fees for successfully reversing a DVRO against him, Manish is effectively a prevailing respondent. The statutory language thus makes any award of fees discretionary.

The record of the argument is clear that the court found that neither party was a prevailing party at the hearing that

16

resulted in the 2018 mutual DVROs.  The court stated this conclusion at the November 2019 hearing even after the Court of Appeal had reversed the DVRO against Manish.

This conclusion is not an abuse of discretion.  As the Court of Appeal noted in its opinion reversing the "mutual" restraining order as to Manish, there was already a five-year DVRO in effect against him when the April 2018 mutual order was erroneously granted.  (*Ankola I, supra,* 36 Cal.App.5th at p. 567.)  That August 2017 DVRO was later upheld.  (*Ankola II, supra,* 53 Cal.App.5th at p. 381.)

The trial court mentioned that preexisting DVRO against Manish as an additional basis for denying Manish's request for fees for obtaining a DVRO against Priyanka.  Specifically, the court stated that "under all of the circumstances here I think it would be inequitable to assess [Priyanka] with attorneys fees from that second DVRO, given the context that there was and remains a five-year DVRO against Mr. Ankola.  And I, under the circumstances, find it would be vastly inequitable to award fees on that basis."  The trial court later stated that "the reason why the [c]ourt entered a five-year restraining order is it found your conduct to be egregious.  So you are now suffering the consequences of your behavior.  And I'm sorry that that's the case, but that is the case."[15]

_____

[15] Far from demonstrating bias or prejudice, as Manish argues, these statements simply set forth the trial court's opinion of the evidence, which is wholly consistent with the performance of its duties. (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219–1220 [" '[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based

17

In essence, even though the April 2018 DVRO against Manish had been reversed by the Court of Appeal, as of the date of the hearing on the motion for attorney's fees, there were still active restraining orders against both parties—the five-year August 2017 DVRO against Manish, which the court itself stated was based on "egregious" conduct, and a three-year order against Priyanka.

Where a statute providing entitlement to attorney's fees to a prevailing party does not define "prevailing party," such a determination is left to the discretion of the trial court. (See, e.g., *Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1128.) The trial court must determine who is the prevailing party " 'on a practical level.' " (*Id.* at p. 1129.)[16]

In this case, it is clear from the record that the court concluded that there was no prevailing party after the April 2018 hearing—even after the second DVRO against Manish was

upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action. . . . The opinion thus formed, being the result of a judicial hearing, does not amount to [improper] bias and prejudice' "].)

[16] Other courts have held that when the statute is silent, the general definition of "prevailing party" in Code of Civil Procedure section 1032 may be used. (See, e.g., *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1777.) In this case, it amounts to the same thing, as Code of Civil Procedure section 1032, subdivision (a)(4) provides that when a party recovers "other than monetary relief" and in "situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, . . . may apportion costs between the parties on the same or adverse sides."

18

reversed—because the restraining order awarded to Manish was offset by the existing five-year DVRO that had been awarded against him.

The trial court is in the best place to observe the testimony and the demeanor of the witnesses and to consider over all whose attorney's fees were justified and whose were not. Indeed, although we lack the transcripts upon which the DVROs were granted, the transcripts that we do have are replete with references to Manish's re-litigation of various matters, ending with a warning that he could be declared a vexatious litigant if he did not change his litigious ways. (Cf. *In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 473 [court's findings that party overlitigated his divorce case were supported by substantial evidence, so it was not abuse of discretion to deny his request for fees].)

Because the record supports the court's denial of Manish's fees, this is not a basis to reverse.

### b. Evidence of financial condition

Next we address the trial court's erroneous statement during oral argument that the financial condition of the parties is irrelevant to a ruling on a request for fees by a prevailing petitioner. Upon the court's announcing its tentative decision against him, Manish began to argue that the court should consider the parties' ability to pay. Although the court stated that the issue was "irrelevant," it allowed the argument. In response, the court then noted that it had, approximately six months previously, denied Manish's request for spousal support and need-based attorney's fees. The court inquired whether there was any change of circumstances since it had ruled on those matters, and noted that despite Manish's alleged hardships,

19

Manish was in possession of real property that Manish valued at $800,000. Thus, to the extent the trial court erroneously concluded that evidence of Manish's finances were irrelevant as it related to fees regarding Manish's having *obtained* the April 2018 DVRO against Priyanka, the record adequately demonstrates that there is no likelihood that the trial court would have reached a different result without that erroneous comment; indeed, arguably the court *did* consider them.[17] Especially in light of Manish's failures to meet his burden either below or on appeal,[18] we find that this error was harmless.

_____

[17] When it stated that the financial condition of the parties was irrelevant, the court did not distinguish between the fees incurred by Manish as a prevailing party on his request, or as a prevailing defendant in the mutual DVRO that was reversed on appeal. Finally, Manish does not make any separate argument challenging the court's ruling that it had already denied the $2,291 in fees incurred by Manish opposing Priyanka's RFO to set aside the April 2018 DVRO and so any such argument is waived. (*Paulus v. Bob Lynch Ford, Inc., supra,* 139 Cal.App.4th at p. 685.)

[18] In his brief on appeal, Manish does not cite to his financial documents in support of his RFO for attorney's fees, citing instead to documents filed in support of his request for spousal support, filed some eleven months later. A court's ruling at any given time can only be based on, and must be reviewed with reference to, the facts that were before it at that time. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [" 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration' "].) Moreover, even looking at the relevant documents filed in support of his RFO, Manish failed to file any declaration by an

**D. The trial court did not abuse its discretion in denying the motion to compel and denying terminating or monetary sanctions**

**1. Standard of review**

A trial court's determination of a motion to compel discovery is reviewed for abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) An order for discovery sanctions, including terminating sanctions, is also reviewed for abuse of discretion. (*R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 496.)

We affirm a court's ruling where there is a sufficient legal ground to support it, regardless of the grounds relied upon by the trial court. (*Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1457.) The order of the trial court is presumed correct and all presumptions are indulged to support the order on matters as to which the record is silent. It is an appellant's burden to affirmatively demonstrate error and, where the evidence is in conflict, this court will not disturb the trial court's

---

attorney or attach any invoices and chose instead to summarize them in his own declaration. As the moving party, a prevailing defendant seeking fees and costs " ' " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' " ' " (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784.) While lack of invoices or billing statements is not fatal to a request for fees, they can be made up for by a sworn declaration of counsel. (*Id.* at p. 786.) Here, however, all the court had to go on was the declaration of Manish, a party it had already found to have lacked credibility.

findings.  (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487.)

### 2.  There is no basis for reversal of the order denying the motion to compel

Manish argues that the ruling on the motion denying his motion to compel should be reversed because the motion was timely filed within 45 days of Priyanka's supplemental responses. However, Manish does not mention the second reason that was given by the trial court; namely, that it found the responses provided by Priyanka to have been in "good faith," "reasonable," and to the "best of her ability."

The record supports this finding.  As detailed in Priyanka's counsel's declaration in support of her opposition to the motion, she complied with the terms of a stipulation that had been made between her and Manish's attorney at a prior hearing,[19] and then

---

[19] Though it is not directly at issue in this appeal, Manish claims that the stipulation entered into by his attorney at a prior hearing regarding discovery was not valid because he did not consent to or authorize it.  We reject this faulty conclusion, as did the trial court.  (See *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403–408 [attorney is authorized by virtue of his employment to bind the client by entering into stipulations on procedural matters but not to " 'impair the client's substantial rights or the cause of action itself' " by, for example, settling the case or agreeing to transfer the action to arbitration]; *Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 116 [attorneys were acting within their authority as attorneys of record in entering into stipulation resolving a discovery dispute, noting:  "If we were to give any credence to [appellant's] argument, trial courts would no longer have the ability to resolve discovery disputes by any means other than formal, fully contested motions"].)

made numerous subsequent supplemental responses. Among the exhibits attached to the declaration was a cordial "meet and confer" letter from her counsel noting, among other things, that she would be producing certain additional documents, did not have other documents, and had already fully responded to yet other requests as of the original due date, and thus any further motion to compel would be untimely. Another exhibit consisted of her verified Fourth Supplemental Responses to the Second Set of Demands, served by mail on August 14, 2019. Her memorandum of points and authorities contended that as to certain documents, the motion to compel was untimely because the responses had taken place on May 24, 2019 and there was no indication that the response was incomplete or that she was still looking for information. Her opposition also argued that evidentiary and terminating sanctions should be denied because respondent "has no history of violating a discovery order" and due to Manish's failure to fully meet and confer. We find no abuse of discretion as it relates to the denial of the motion to compel, even assuming the motion was filed timely.

Since we find it reasonable for the court to have denied the motion to compel, we find no abuse of discretion in the court's failure to assess the requested monetary sanctions of $10,325 in connection with his motion.

Turning to Manish's request for terminating sanctions, the standard for granting a motion for terminating sanctions is quite high. Discovery sanctions should be "appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793.) Despite a court's broad discretion to select the appropriate

23

penalty, "the terminating sanction is a drastic penalty and should be used sparingly." (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604 [imposition of the terminating sanction was an abuse of discretion where it was the first and only sanction imposed].)

Indeed, "[a] prerequisite to the imposition of the dismissal sanction is that the party has wilfully [*sic*] failed to comply with a court order." (*Laguna Auto Body v. Farmers Ins. Exchange, supra,* 231 Cal.App.3d at p. 488.) Here, there was no showing that Priyanka had failed to comply, willfully or not, with any prior court order.[20]

Manish also argues the trial court's bias against him was evident when, during a prior hearing on discovery, it mentioned that the "context" of the case included that it had ruled against him at a prior DVRO hearing and found him to lack credibility. He also claims that the court inaccurately recalled the case, appeared to be "annoyed" at him during the hearing on the discovery sanctions when he requested a statement of decision, and that while the court agreed to give an oral one at the end of the hearing, it did not. None of these points merits reversal of the court's ruling.

Addressing the latter point first, we note the court was not required to give a statement of decision on this matter. Under

---

[20] Although Manish claimed that Priyanka violated unspecified prior court orders on discovery, the record does not support this argument. In fact, at the April 2019 hearing, the court issued a tentative only, and as Manish concedes, there was no formal stipulated order or findings and order after hearing relating to that April 2019 discovery hearing.

24

Code of Civil Procedure section 632, upon timely request, a trial court shall issue a statement of decision explaining the factual and legal basis for its decision "upon the trial of a question of fact by the court." A hearing on a motion for discovery sanctions is not a trial, and thus, no statement of decision was required. (*Clinton v. Joshua Hendy Corp.* (1966) 244 Cal.App.2d 183, 187–188 [findings need not be made in proceedings to determine a motion even when affidavits are filed on a question of fact and testimony is taken to augment the affidavits, because section 632 only applies to a "trial."].) There are some notable exceptions to this general requirement in family law; for example, where the issues are sufficiently important, as in a child custody hearing, a statement of decision must be provided upon timely request regardless of whether the hearing is based on a motion or takes place at trial. (See *City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 544–547 [court erred in refusing request for statement of decision when ordering a visitation schedule].) However, Manish cites no case requiring a statement of decision for a hearing on a motion for discovery sanctions and the caselaw suggests otherwise. (*City and County of San Francisco,* at p. 544 [section 632 "does not apply to an order on a motion"].)

Second, although Manish contends the court had an inaccurate recollection of the case, Manish does not explain in what regard. The two statements quoted in his brief (that "mother"[21] had a DVRO and the court ruled in "dad's" favor, and

---

[21] We understand the trial court to have been referring to Priyanka as "mother" and Manish as "dad." While there were no children in this particular case, it is not uncommon for family

that the court awarded mother attorney's fees for prevailing on her renewed DVRO) do not indicate any error. Specifically, as of the April 2019 hearing that Manish references, the court *had* ruled in Manish's favor on Priyanka's first DVRO; then, at a later hearing, the court granted Priyanka's subsequent DVRO, found Manish to lack credibility, and granted Priyanka fees.

More importantly, a reasonable review of this record does not support an inference that the trial court denied the motion for discovery sanctions because it was annoyed with Manish or because of the prior DVRO history. In fact, despite the court's concerns about Manish's "litigation tactics" and that his filings were unreasonable in their bulk, in their frequency and in their attempts to relitigate matters that had already been litigated, the court *denied* (without prejudice) Priyanka's motion to declare Manish a vexatious litigant at the very same hearing that it denied his motion for discovery sanctions.

Rather, the facts before the trial court supported a denial of the motion based on the court's reasoning that the discovery responses were adequate. (Cf. *Lopez v. Watchtower Bible & Tract Society of New York, Inc., supra*, 246 Cal.App.4th at pp. 605–606 [reversing terminating and monetary sanctions where there was no evidence that lesser sanctions would have failed to obtain compliance with the document production order].) Since we affirm on this ground, we need not address any other ground raised.

---

courts to refer to the parties by these monikers (or as "husband" and "wife") rather than by individual names for ease of reference.

## E. The denial of temporary spousal support to Manish

### 1. Standard of review

The standard of review that applies to an order for temporary spousal support is abuse of discretion. (*In re Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 773.) In exercising that discretion, a trial court may properly consider the " 'big picture' " concerning the parties' assets and income available for support in light of the marital standard of living. (*Ibid*.)

### 2. The trial court's ruling was not an abuse of discretion

Temporary spousal support is governed by Family Code section 3600. That section provides that during the pendency of any proceeding for dissolution of marriage, the court may order "either spouse to pay any amount that is necessary for the support of the other spouse, consistent with the requirements of subdivisions (i) and (m) of Section 4320 and Section 4325." (Fam. Code, § 3600.)[22]

Awards of temporary spousal support do not serve the same purpose, nor are they governed by the same procedures, as awards for permanent spousal support. " 'Temporary spousal support is utilized to maintain the living conditions and

---

[22] Family Code section 4325 does not apply here, as it prohibits an award of spousal support to a spouse who has been convicted of certain crimes for domestic violence, which did not occur in this case. Family Code section 4320, subdivision (i) relates to "documented evidence of any history of domestic violence" between the parties–which does apply in this case–and subdivision (m) relates to a criminal conviction of an abusive spouse–which does not.

standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations.' " (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594.) "Awards of temporary spousal support rest within the broad discretion of the trial court and may be ordered in 'any amount' ([Family Code] § 3600) subject only to the moving party's needs and the other party's ability to pay. [Citation.] Permanent support, by contrast, is constrained by numerous statutory factors set out in section 4320." (*Ibid*.)

In light of this clear distinction, we reject Manish's argument that the court abused its discretion by failing to consider the criteria set forth for permanent spousal support orders in Family Code section 4320.

The initial order denying temporary spousal support, filed April 2019, noted that with husband currently unemployed and in law school, and wife earning $12,900 per month, guideline support[23] would be approximately $4,000 per month. However, the court ruled that in this case there were "additional factors" which made application of the guideline formula inequitable. Specifically, the court noted that:

(1) while the case had been pending since late 2015, the first request for spousal support wasn't filed until February 2019;

---

[23] In many counties, including Santa Clara, temporary spousal support can be calculated according to certain formulas or standardized local schedules; however, the appropriateness of ordering such "guideline" support can be rebutted. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327–1328.)

2) while the parties had been separated over three years, the marriage itself lasted only fourteen months (or at most, eighteen months, as argued by Manish's attorney);

3) that during the marriage, both parties were employed, each earning between $135,000 and $165,000 per year;

4) that Manish was laid off in March 2017, over a year after separation; and

5) that although Manish claimed to have made efforts to find employment since he was laid off, he enrolled in law school the same year and has not worked since.

Thus, the court concluded: "The amount of time that has passed since separation relative to the short duration of marriage,[24] coupled with Husband's decision to attend school rather than find employment, make application of the guideline formula inequitable here." As the court noted at oral argument: "And his decision to go to law school is absolutely fine, but the

---

[24] Though not directly applicable here, because it relates to permanent support, Family Code section 4320, subdivision (l) codifies the goal that a supported party shall be self-supporting within a reasonable period of time, and that a " 'reasonable period of time' " in the case of a marriage of less than ten years is generally one-half of the length of the marriage, subject to the court's discretion. Manish acknowledges in his brief that this factor does not apply here, because section 4320 does not apply to granting temporary spousal support yet elsewhere argues that the court should have granted his "request for temporary spousal support under § 4320." (*In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1153, fn. 11 ["[A party] cannot rely on [section 4320] when it serves him but deny its applicability when it does not. Further, nothing in section 3600 prevents a trial court from considering the factors listed in section 4320"].)

question is should mother pay for that decision. Should [mother] be required to pay support while he's in law school; and [] that is not part of the status quo."

Manish did not appeal that order. Instead, he filed a second request for temporary spousal support in November 2020, about eighteen months later. In that request, he renewed his request under both Family Code sections 3600 and 4320, stating that there was a "substantial change in circumstances, and because [his] financial hardships have worsened making it difficult to sustain [him]self." He did not cite any new efforts to find employment since his previous filings in March 2019. He stated, without corroboration from any third party or any documentation, that no law firms would hire him due to the DVRO against him "and the pending cases in court." He stated that he had completed law school and had a J.D. as of May 2020, but he was still awaiting results from the California bar exam and the moral character determination.[25] He included numerous accusations against Priyanka, including that she had made fabricated allegations of abuse, frustrated discovery, and disparaged him and deterred third parties from associating with him. He stated that he now was in worse financial condition, noting debt to the IRS, Franchise Tax Board, mortgage, loans to family, attorney's fees and credit cards.

---

[25] Although Manish's opening brief claims that he received an "adverse moral character determination from the State Bar," the record citation provided is to Manish's declaration in support of his request for spousal support, in which he stated that the moral character determination was "still pending approval."

What Manish failed to address, however, was the reasoning behind the trial court's prior denial of spousal support to him. None of Manish's allegations in his new round of spousal support addressed the grounds provided by the trial court: that the marriage was of extremely short duration; that during the brief marriage both parties had earned six figures; that over a year after separation, Manish became unemployed and had chosen to enroll in law school; and that it was more than three years after separation that he made his first request for support.

The trial court was not persuaded.[26] Neither are we. The trial court denied the renewed request based on the fact that the matter had been previously litigated in March 2019 and there were no changes in circumstances, "as well as the Petitioner and Respondent's 15 month marriage being extremely short. The trial court also took into consideration the existence of a 5 year restraining order in denying the Petitioner's request."

Courts will not revise a support order, even a temporary one, without a material change in circumstances. (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638.) The trial court's previous denial of spousal support was reasonable and Manish did not address that reasoning in his subsequent request. Put simply, the fact that Manish purportedly got into a deeper financial hole between 2019 and 2020 does not translate into fixing the original problems cited by the trial court regarding the duration of the marriage and the passage of time since

---

[26] The hearing on the motion was set for December 16, 2020, but we have neither the reporter's transcript nor the minute order in the record before us. We do, however, have the findings and order after hearing filed December 18, 2020.

separation.[27]  It is not unreasonable to conclude that granting spousal support in this context would have unfairly rewarded one spouse of a short-term marriage by making his partner bear the burden of his subsequent financial misfortune.

In the context of domestic violence, the wisdom of denying that bid is only more apparent.  We reject Manish's argument that the trial court's reference to the five-year restraining order demonstrates an abuse of discretion.  To the contrary, the trial court was obligated to consider the history of domestic violence between the two parties.  (Fam. Code, § 3600; referencing § 4320, subd. (i).)  While Manish argues that the trial court showed bias by considering the five-year DVRO against him but not the three-year DVRO against Priyanka, we disagree.  The same court

---

[27] Manish cites *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 656, fn. 3 in support of his argument, but appears to miscite the case.  There, the court held that it would not always be an abuse of discretion to order a substantive stepdown (i.e., a reduction that will take place in the future) of spousal support, noting "[a]fter a short-term marriage, where no order for long term or 'permanent' support would be appropriate, such an order [meaning, a step-down order] might be an appropriate vehicle for assisting an economically disadvantaged spouse to make an orderly and less traumatic transition to self-supporting status."  Therefore, if anything, *Prietsch & Calhoun* cuts the other way, since in the case at bar, Manish as the spouse seeking support was self-supporting during the marriage, and only became economically disadvantaged some two and a half years after separation.

granted both DVROs and was in the best position to assess the consideration merited by each one.[28]

### F. There is no basis to reverse the orders made at trial

Manish argues that he did not obtain a fair trial because the trial court "exhibited continuous bias against [him] by ruling against [him] on practically any and all matters," and that although Manish asked for a two-day trial, the court set a two-hour trial which led to an erroneous ruling on the date of separation. Manish also contends (under the same general heading regarding bias) that the trial court did not rule on his motion in limine and allowed Priyanka to look up information on her phone; that the trial court unfairly divided up the community assets and debts; and that the trial court incorrectly concluded that each party sought attorney's fees, when in fact, neither of them made such a request.

On appeal, we assess whether any judicial misconduct or bias was so prejudicial that it deprived a party of " ' "a fair, as opposed to a perfect, trial." ' " (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112.) Moreover, "a trial court's numerous rulings against a party–even when erroneous–do not establish a charge of judicial bias, especially when they are subject to review." (*Ibid.*)

We examine Manish's contentions in turn.

---

[28] We decline Manish's invitation to consider the fact that the five-year DVRO against Manish was later terminated with Priyanka's agreement after all three of these notices of appeal were filed. Generally, appellate courts disregard matters that occur after rendition of an appealed judgment. (*Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 882.)

### 1. Date of separation

As noted in the section, *ante,* regarding the date of separation, Manish has shown no evidence of any prejudice that he suffered as a result of the trial court's determination that the date of separation was December 15, 2015 rather than December 26, 2015. We have already concluded that the trial court's ruling on the date of separation was based on substantial evidence. In arguing that the trial court's bias led to an incorrect decision on the date of separation, Manish does not point us to any specific witness or piece of evidence that he was unable to introduce.[29] We see no reason to reverse this finding.

---

[29] Manish's citation to an admission that Priyanka was trying to work out the marriage until she was served with annulment papers is akin to rearguing the evidence but it does not reveal any evidence that he was prevented from presenting. The minute order reflects that in fact the exhibit mentioned, Petitioner's Exhibit 1, was marked as evidence at the trial and that both Manish and Priyanka were sworn in and argued at the trial. There is no evidence that the time frame prevented him from utilizing this exhibit or from having it admitted.

## 2. Two-hour trial

As for the issue of Manish's being given a two-hour trial rather than a two-day trial, as his lawyer had apparently requested, Manish fails to show prejudice on this issue as well. As noted *ante*, Manish has failed to provide a transcript from the trial. He appellate briefing does not proffer who he would have called if he had been allowed to, and how it would have made a difference, other than stating, without specificity, that he had four unnamed witnesses he wanted to call.

The setting of a shorter trial than is requested by one party does not, in itself, manifest bias or prejudice. To the contrary, a superior court has the inherent authority to "provide for the orderly conduct of proceedings before it." (Code Civ. Proc., § 128, subd. (a)(3).) This includes a responsibility to "fairly and efficiently administer the judicial proceedings before it . . . [and] the power to . . . guard against inept procedures and unnecessary indulgences that tend to delay the conduct of its proceedings. [Citation.] In this vein, the court has the power to expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact. [Citation.] But a court need not wait until a trial has been unduly prolonged before it takes measures to expedite the proceeding. We believe it is clearly within the power of the court to impose time limits before the trial commences. [The court's] ruling will not be disturbed on appeal absent an abuse of discretion." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22.)

Indeed, Manish's suggestion that it is a mark of bias for a court not to adopt an attorney's trial estimate would result in an absurd and unmanageable result, tethering the length of trials to

35

the parties' discretion, rather than the court's.  Rather, "[i]t is incumbent upon trial judges to manage trials efficiently." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators, supra*, 226 Cal.App.4th at p. 20.)  Indeed, after obtaining trial estimates from both parties, "the court should independently evaluate the estimates based on the arguments of the parties, the state of the pleadings, the legal and factual issues presented, the number of witnesses likely to testify, the court's trial schedule and hours, and the court's experience in trying similar cases."  (*Ibid.*)

Manish has cited no specific witness or piece of evidence that he was unable to present to the court, nor any other specific procedural flaw that reasonably would have made a difference, had the court extended the trial beyond two hours, and thus has not shown any prejudice or abuse of discretion.  We find none.

### 3.  Motion in limine

Manish also complains that he filed a motion in limine seeking to preclude Priyanka from producing any documents not already produced in discovery responses.  He claims that the trial court "refused to make a ruling, deferred making a ruling [*sic*] until the conclusion of the trial[,] but never made a ruling."

Manish's motion in limine moved the court to preclude Priyanka from presenting at trial "any expert witnesses, expert witness reports, or any additional evidence not provided in her discovery responses . . . [or] in her trial brief."

Again, Manish provides no transcript from the hearing on the motion, which took place on the day of trial.  The statement of decision addressed Manish's motion in limine as follows:  "The Court reserved ruling on the motion, so that it could be considered in context of evidence produced.  Once the trial

36

commenced, [Manish] never objected based upon the motion in limine, which is therefore moot."

The court's ruling on the motion in limine was correct. The court in *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, was confronted with a similar motion in limine. As the court stated there, where no specifics are presented of the evidence to be excluded, a trial court is left to guess what may be included within the scope of the ruling. In such a case, it is appropriate to defer ruling on any exclusion of evidence until the time of trial when an objection can be made to the proposed introduction of evidence. (*Id.* at pp. 670–671.)

Manish claims, without any citation to the record, that the trial court "allowed Priyanka to verbally assert credit card debts in December 2015 by looking up on her phone, against Manish's objections, and taking her word for it, with no documentary evidence or proof of the debts asserted."

In the absence of a transcript or any other evidence that Manish did object to any evidence presented by Priyanka as the trial unfolded, we have no reason to doubt the court's statement in the statement of decision that Manish did, in fact, fail to object. In fact, we must presume the court's statement to be correct. (See *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error"].) We find no error as to the motion in limine.

## 4. Rulings on division of property

Family Code section 2550 provides that in a proceeding for dissolution of marriage, the court shall "divide the community estate of the parties equally." We review the trial court's judgment dividing marital property for an abuse of discretion. (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201.)

In addition, we review the trial court's factual findings as to the separate or community character of assets by the substantial evidence test. (*In re Marriage of Trantafello* (1979) 94 Cal.App.3d 533, 546.) We view the evidence in a light favorable to the successful party, according the benefit of every reasonable inference and resolving all conflicts in favor of the judgment below. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) All issues of credibility are within the province of the trier of fact alone. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926.)

Manish's attacks on the court's findings as they related to the parties' bank accounts, credit card debt, reimbursement for life insurance loans, division of interest in the community automobiles, are limited to arguing that the trial court's bias was "evident" anytime the court ruled in favor of Priyanka. However, as noted above, simply ruling against Manish—even repeatedly—does not constitute bias. (*People v. Guerra, supra*, 37 Cal.4th at p. 1112.) The reason is evident: if such conduct constituted bias, then nearly every trial would have to be reversed for bias, since in nearly every trial one party loses.

Moreover, Manish omits the court's rulings in his favor on several matters. For example, the trial court ordered that *both* parties' bank accounts at date of separation should remain their

own, because *both* parties failed to adequately show their entitlement to reimbursement for funds spent after the date of separation on community debts. However, Manish mentions only the unfairness of Priyanka not having to reimburse him funds, neglecting the court's order that he did not have to reimburse Priyanka any funds, either. Nor does Manish mention how much was in his bank account.

His argument regarding reimbursement for life insurance loans also lacks merit. The argument is conclusory and does not provide sufficient information for us to conclude that there was any bias or prejudice. Contesting the court's ruling, Manish cites only to argument in his trial brief and two exhibits, one setting forth the total amount of loans as of December 26, 2015 (his preferred date of separation) as well as a document showing a separate property loan taken out on May 21, 2012. This does not prove false the court's finding that there is no nexus between the parties' marriage and these loans. Manish does not cite to any evidence or testimony as to what any of the loans, whether before, during, or after marriage, were spent on. Again, "[w]ithout a record, either by transcript or settled statement, a reviewing court must make all presumptions in favor of the validity of the judgment." (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935.)

Manish further complains about the court's decision on the amount of Priyanka's interest in Manish's separate property home. However, the trial court *used the calculations made by Manish's own expert*.

Manish's challenge to the court's order granting Priyanka her engagement ring and two other bands given to her in anticipation of their wedding (failing to mention that Manish was

also granted his own wedding band) is meritless. Manish's sole argument in support of this contention—that the marriage was a " 'sham' "—has already been fully litigated. His request for nullity was denied and that ruling was affirmed on appeal. (*Ankola II, supra,* 53 Cal.App.5th at p. 390.) As was noted by the trial court, it is not reasonable for Manish to continue to make arguments that the courts have already rejected.

Finally, Manish's argument that the trial court erroneously stated that both sides sought need-based fees and sanctions pursuant to Family Code section 271 is another example of argument for argument's sake. The court did not order any fees or sanctions. What is Manish complaining of here? There is no prejudice and so there is nothing to correct on appeal.

In conclusion, it is true that the court credited Priyanka on many matters at trial, but it also credited Manish on other matters. There is nothing in the record that indicates any bias,[30] abuse of discretion, or absence of evidence to support the trial

---

[30] Manish points out that on February 25, 2021, two days after the court issued its final statement of decision, it recused itself "from any further role in [this case]." The record does not reflect the reason why the court recused itself. However, this does not affect our conclusion for two reasons. First, as noted previously, generally conduct that takes place after the judgment complained of will not be considered on appeal. Second, even were we to consider this fact, under Code of Civil Procedure section 170.3, subdivision (b)(4), when a judge disqualifies himself or herself after making rulings on a case but before the matter is concluded, "in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge."

court's reasoned opinion dividing the parties' community interests concerning this short-term marriage.

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

RICHARDSON (ANNE K.), J.*

WE CONCUR:

EDMON, P. J.

EGERTON, J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.